[Civil No. 4086.   Filed December 11, 1939.]

[96 Pac. (2d) 755.]

DAISY MERYLN ROTHMAN, Appellant, v. ELIZA-
BETH E. RUMBECK, as Administratrix of the
Estate of DICK V. RUMBECK, Deceased, Appel-
lee.

444

Messrs. Cunningham & Carson and Mr. Joseph T. Melczer, Jr., for Appellant.

Mr. James E. Nelson, for Appellee.

ROSS, C. J.—This is an appeal from an order granting a new trial.

The plaintiff Daisy Meryln Rothman and Dick V. Rumbeck were wife and husband from January 25, 1918, to January 22, 1932. On this last date he obtained a divorce from plaintiff on the ground of desertion and thereafter married the defendant Elizabeth E. Rumbeck, who was his wife when he died on July 8, 1937. On July 26, 1937, defendant was granted letters of administration of her deceased husband's estate.

On or about October 13, 1937, the plaintiff presented to the defendant administratrix a creditor's claim for allowance as follows: One-half of the premiums paid by the community during coverture on a life policy in the Northwestern Mutual Life Insurance Company, issued to the decedent prior to his marriage to plaintiff; and one-half of their community property (other than premiums on life policy) valued, at the time of the divorce on January 22, 1932, at approximately $3,000.

In the creditor's claim it is alleged that there was no division of the community property in the divorce decree, and that there had not been any property settlement or agreement of any kind as to the community property. The claim was disallowed by the administratrix and thereafter this action was instituted to collect it. There were three items in the claim and three causes of action set out in the complaint but only the first and third are involved on this appeal.

Defendant's answer to the first cause of action was an admission that the premiums were paid by deceased as alleged in the complaint but it denied that Dick V. Rumbeck at the time of his death was indebted to plaintiff for a sum of money equal to one-half of the premiums paid on said policy or was indebted in any amount; alleged that Rumbeck had the right to change the beneficiary named in the said policy and after the divorce had changed the beneficiary from plaintiff to his estate, or his heirs, executors and administrators, and that said policy was so payable at the date of Rumbeck's death; that the said Rumbeck was granted a divorce from plaintiff on the ground of desertion and that the plaintiff made no appearance in the said divorce action and made no attempt to claim or recover any interest in said policy, and that, the beneficiary having been changed in 1932, plaintiff had no right to claim any interest whatever in said policy; that defendant was the widow and only heir of said Rumbeck and entitled to all of the proceeds of the said policy.

Defendant's answer to the third cause of action was a denial, on information and belief, of the allegations of the complaint that there had been no division of the community property at the time of the divorce; a denial that there was any community property whatsoever at such time, and an affirmative allegation that all of the assets of the estate were community property of defendant and the deceased.

The case was tried by the court without a jury and plaintiff was given judgment for $215.45 on her first cause of action, being one-half of the premiums advanced on the Northwestern Mutual's policy; and $875 on her third cause of action as one-half of the other community property owned by the plaintiff and deceased at the time of the divorce.

The defendant thereafter filed her motion for a new trial, which was granted. The plaintiff appeals.

While in the motion other grounds or reasons are urged, the only one that would justify the order for a new trial is that the decree in the divorce case was *res judicata* of the property rights of the parties. The plaintiff contends the motion should not have been granted on this ground for the reason *res judicata* was not set up as a defense in defendant's answer. It is urged that if defendant desired to rely on estoppel by judgment she should have affirmatively pleaded it, and not having done so she waived the estoppel, if there be one.

■ An examination of the evidence shows that the record of the divorce case was introduced by the defendant, on the theory that there might be "a question of estoppel in the case," without any objection on the part of the plaintiff. The authorities are divided upon the question as to whether a party can claim *res judicata* when he has not pleaded it. Some of the decisions hold that he may not and others that he may introduce such defense under the general issue. 34 C. J. 1055, sec. 1491; 15 R. C. L. 1045, secs. 524, 525. Although the judgment in the divorce case was not pleaded in this action as an adjudication of the property rights of the parties, it was introduced without objection and we think the defect of pleading, if there was such, was waived. The issue of *res judicata* was tried and we will therefore examine the case on the sufficiency of the plea; that is, we are to determine whether

what was adjudicated in the divorce case was *res judicata* of the property rights of the parties. In that case the complaint alleged that there was no community property. It prayed for a divorce and for general relief. The decree recited that the defendant (the present plaintiff) was duly and regularly served with summons and that she failed to appear or answer. The finding was that all of the allegations of the complaint were true. This was followed by an order dissolving the bonds of matrimony, but the decree said nothing about the property rights of the parties.

Under facts so far as material the same as here, the California court, in *Brown* v. *Brown,* 170 Cal. 1, 147 Pac. 1168, 1170, said:

"It is earnestly contended by the respondent that the final decree is of no force whatever upon the right of the plaintiff in the property of the husband. In this we think the plaintiff is mistaken. Where a defendant is served with a summons and complaint stating the facts upon which he is required to act, and he makes default, he is presumed to admit all the facts which are well pleaded in the complaint. The judgment which follows upon this sort of admission is, in contemplation of law, a complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint, including the facts in his favor as well as those against him. The defendant here is presumed to have acceded to the proposition embraced in the complaint and to have consented that plaintiff should obtain the relief therein prayed for, upon the conditions and facts set forth in the complaint. The proceeding is equivalent to a statement by Brown to plaintiff that he did not object to a divorce for the cause alleged, based upon the theory that there was no community property existing at the time the action was begun. When judgment is rendered upon such a complaint and default, it becomes, in effect, a contract between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief. 1 Freeman on

Judgments, § 330; *Hoh* v. *Hoh,* 84 Wis. 378, 54 N. W. 731. Although the final decree is silent as to property, it nevertheless operates as an adjudication that at the time the action was begun there was no community property. *Thompson* v. *McKay,* 41 Cal. [221] 227; *Champion* v. *Woods,* 79 Cal. 17, 21 Pac. 534, 12 Am. St. Rep. 126.''

This case has been followed and approved by the following cases: *Callnon* v. *Callnon,* 7 Cal. App. (2d) 676, 46 Pac. (2d) 988; *Lorraine* v. *Lorraine,* 8 Cal. App. (2d) 687, 48 Pac. (2d) 48; *Peters* v. *Peters,* 16 Cal. App. (2d) 383, 60 Pac. (2d) 313.

If the law in this state was the same as California's, we would feel compelled to follow the above decisions. Section 146 of the Civil Code of California (Kerr's, part 1) provides that upon a dissolution of a marriage the community property shall be divided or assigned in the manner therein stated. The statute does not make any provision for community property not divided or assigned or disposed of by the court's decree in the divorce proceeding, leaving it to the courts to ascertain from the facts the character of any such undivided property. This is not so with our statute. The pertinent section reads as follows:

''*Disposition of property; decree may be made lien on separate property.* On entering a decree of divorce the court shall order such division of the property of the parties as to the court shall seem just and right, according to the rights of each party and their children, without compelling either party to divest himself or herself of the title to separate property. The court may, however, fix a lien upon the separate property of either to secure the payment of any interest or equity that the other party may have in or to such separate property, or any equity that may arise in favor of either party out of their property during the existence of the marriage relation, or to secure the payment of an allowance for the support and maintenance of the wife or minor children of the parties. The decree shall specifically describe the real property affected and

situate in this state. Any separate property of either party of which no disposition is made in the decree shall remain the separate property of such party, free of all claims of the other party; *any community property for which no provision is made in the decree shall be from the date of such decree, held by the parties as tenants in common, each possessed of an undivided one-half interest therein.''* (Italics ours.) Sec. 2182, Rev. Code of 1928.

*Brown* v. *Brown* and like cases were decided, not upon the ground that there was no community property, but on the ground that the defendant in the divorce case had defaulted after being duly served with process and failed to defend against the allegation that there was no community property. In other words, defendant, by not putting up a fight for the community property in the divorce proceeding, had precluded herself from proving the truth in the later action by showing that there was such property. But our statute says

"any community property for which no provision is made in the decree shall be from the date of such decree, held by the parties as tenants in common, each possessed of an undivided one-half interest therein."

Thus, it is the fact that there is community property unprovided for in the decree that constitutes the spouses the owners thereof in common. Our statute being different from California's, the decisions of that court, while entirely right, are not binding upon this court.

Under the Washington cases, whose decisions as to community property we have generally followed, such a finding does not estop even the party who pleaded it. In *Barkley* v. *American Sav. Bank & Trust Co.*, 61 Wash. 415, 112 Pac. 495, 496, the wife in her complaint for divorce alleged, and the court found, that there was no community property. Later, in an·action in-

volving the ownership of a draft and as to whether it was community or separate property, the court said:

"It is also contended that the allegations in the divorce complaint and the finding of the divorce court in response thereto, that there was no community property, estop the wife and those claiming through or under her from asserting the contrary. *Eckert* v. *Schmitt* [60 Wash. 23], 110 Pac. 635, is cited in support of this view. The point is not well taken. The case is here for review upon the findings of fact and conclusions of law only. In the absence of the evidence, we will accept the findings as conclusive. It may well be that the wife was asserting ownership of the draft in the divorce proceedings in good faith. If so, it is apparent that such a course would not work an estoppel. . . . "

In the later case of *Harvey* v. *Pocock*, 92 Wash. 625, 159 Pac. 771, 772, a question very similar was involved. While the facts differed from those in the Barkley case, the rule announced in the latter was approved, the court saying:

"The theory upon which the learned trial court seems to have sustained the demurrer and upon which the argument of counsel for respondent proceeds is that the decree in the divorce action became a final adjudication of the community property rights of Mrs. Harvey, estopping her from thereafter claiming any of the personal community property remaining in the possession of her husband, even though such property was not brought into the divorce action or specifically disposed of by the decree of divorce.

"It is to be noted that the complaint does not allege that there was any allegation in the complaint in the divorce action or adjudication in the decree in that action that there was no other community property than that disposed of specifically by the decree, but the allegation is that this alleged community property 'was not brought into court in said divorce proceedings nor divided by the court.' This, we think, negatives the idea that there was any *affirmative adjudication,* or any occasion therefor, that there was no other com-

munity property than that specifically brought into the divorce action and disposed of by the decree therein. [Italics ours.]

"It has become the settled law of this state that under such a state of facts the community property undisposed of by the decree of divorce remains undisturbed so far as the respective interests of the members of the community therein is concerned, and that either of them may thereafter enforce their rights in such property by another action. Such property becomes common property instead of community property after the dissolution of the community by the decree of divorce. *Ambrose* v. *Moore,* 46 Wash. 463, 90 Pac. 588, 11 L. R. A. (N. S.) 103; *Graves* v. *Graves,* 48 Wash. 664, 94 Pac. 481; *James* v. *James,* 51 Wash. 60, 97 Pac. 1113, 98 Pac. 1115; *Barkley* v. *American Savings Bank & Trust Co.,* 61 Wash. 415, 112 Pac. 495; *Hicks* v. *Hicks,* 69 Wash. 627, 125 Pac. 945; *Schneider* v. *Biberger,* 76 Wash. 504, 136 Pac. 701 [6 A. L. R. 1056].

"Counsel for respondent, while conceding this to be the general rule, ingeniously argue that personal property remaining in the possession of one of the spouses at the time of the divorce decree, the pleadings and the decree both being silent as to the disposition of such property, should constitute an exception to this general rule. The argument seems to be that, because this alleged community property in the possession of Mr. Harvey could have been brought into the divorce proceedings and specifically disposed of by the decree, appellant, as the successor in interest of Mrs. Harvey, is thereby estopped from now questioning the right of his administratrix to such property. We have at least one decision of this court which plainly makes the general rule above noticed applicable to personal property remaining in the possession of one of the spouses and undisposed of by the decree of divorce. Such was, in substance, the holding in *Barkley* v. *American Savings Bank & Trust Co., supra,* where the husband after divorce was permitted to recover one-half of a sum of money the whole of which was community property and in the possession of the wife at the time of the rendering of the decree of divorce dissolving their marriage, and was not brought into the divorce action

by the pleadings or disposed of by the decree of divorce. . . . ''

■ The first part of section 2182, *supra*, is so much like section 5723, Ballinger's Annotated Codes and Statutes, it probably was taken therefrom. The last part of such section, quoted above, is the statutory rule for this state and takes the place of the court-made rule in the state of Washington. This is made plain by what the court said in *Ambrose* v. *Moore,* 46 Wash. 463, 90 Pac. 588, 589, 11 L. R. A. (N. S.) 103:

'' . . . Where no disposition of the property rights of the parties is made by the divorce court, the separate property of the husband prior to the divorce becomes his individual property after divorce, the separate property of the wife becomes her individual property, and, from the necessities of the case, their joint or community property must become common property. After the divorce there is no community, and in the nature of things there can be no community property. The divorce does not vest or divest title, the title does not remain in abeyance, and it must vest in the former owners of the property as tenants in common. . . . ''

■■ Another reason for asking for a new trial was that the Northwestern Mutual's policy belonged to the estate of the decedent, and that therefore plaintiff was not entitled to recover one-half of the premiums paid thereon out of the community property. The premise is absolutely correct but the deduction therefrom is in error. The policy was the separate property of the deceased when he and plaintiff intermarried and it remained separate property although the community paid the premiums after the marriage. If the wife was entitled to anything, it was to reimbursement of one-half of the advances made by the community. In *Horton* v. *Horton,* 35 Ariz. 378, 278 Pac. 370, we recognized the principle that the community, when it advances funds to improve the sepa-

rate property of one of the spouses, is entitled to reimbursement, following the rule laid down in *Legg* v. *Legg*, 34 Wash. 132, 75 Pac. 130, a community property state. In the case of *Verneuille's Succession*, 120 La. 605, 45 So. 520, 521, under facts like ours, the court said:

"Policies of insurance must be held subject to one rule as relates to ownership. It has always been decided by the courts of this state that it is vested in the insured absolutely when it is issued to him at a date and for his benefit, free from the claim of any other person.

"Holding, now, that the husband's estate is entitled to the amount collected on the policies, we will later pass upon the matter of premiums paid from community funds during the marriage.

" . . .

"In the next place, opponent claims payments made on the policies during community. We alluded to that claim above, and said that we would pass upon it later.

"The community is unquestionably entitled to the amount. The separate estate cannot be benefited by payments for its benefit and not be indebted for them. This was not disputed at bar. The counsel representing the executor said that the amount had already been allowed in the account."

California, a community property state, has adopted the more liberal rule of reimbursing the community from the proceeds of the policy the proportion its payments bear to the whole sum paid in premiums. *Modern Woodmen of America* v. *Gray,* 113 Cal. App. 729, 299 Pac. 754.

It would seem the courts' judgment on the first cause of action is the only one that could have been lawfully rendered upon the facts. No other judgment could be rendered on such facts even if a new trial should be granted. So far as this item is concerned, there appears to be no sound or legal reason why the court should have granted a new trial.

■ It would seem that under our statute community property upon divorce becomes common property of the spouses and remains common until divided one-half to each. The law contemplates that the property will be divided when the divorce is granted but if for any reason it, or any part of it, is not, the parties hold it as tenants in common. If property is overlooked, or secreted by one of the parties, or if they are mistaken as to its character and, for any of these reasons, it is not brought before the divorce court, it becomes and remains common property. This seems too plain under section 2182, *supra,* to require discussion.

■ Bearing in mind the rule that granting or refusing a motion for a new trial rests in the sound discretion of the trial court, and that such discretion will not be disturbed except for its abuse, the question is did the court err in granting a new trial to defendant. We have said the court's discretion must be a legal and not a capricious one; that it must be warranted by law and guided by established precedent. *Sharpensteen* v. *Sanguinetti,* 33 Ariz. 110, 262 Pac. 609. The motion for new trial apparently was granted solely on questions of law. The facts were undisputed.

■ We have arrived at the conclusion that the law points that influenced the court in granting the new trial must be decided in favor of plaintiff and, that being so, it follows that the new trial should not have been granted. In other words, it was not warranted by law or guided by established precedent.

The order granting the new trial is vacated and the cause remanded with directions to reinstate the judgment in favor of plaintiff.

LOCKWOOD and McALISTER, JJ., concur.