379 P.2d 893

**Ruth Louise KINGSBERY, Appellant and Cross-Appellee,**

v.

**John R. KINGSBERY, Appellee and Cross-Appellant.**

**No. 6825.**

Supreme Court of Arizona.

In Division.

March 27, 1963.

218

Lewis, Roca, Scoville, Beauchamp & Linton, and John P. Frank, Phoenix, for appellant and cross-appellee.

Laney & Laney, Phoenix, for appellee and cross-appellant.

J. SMITH GIBBONS, Superior Court Judge.

This action was instituted by Ruth Louise Kingsbery against John R. Kingsbery for an absolute divorce and a division of the com-

munity property. Defendant husband replied by answer and counterclaim, seeking dissolution of the marriage and an adjudication of their property rights. The parties will be designated as they appeared in the lower court.

Plaintiff appeals from that portion of the findings of fact, conclusions of law and judgment which declare two certain items to be the separate property of the defendant; and the defendant cross appeals from that part of the judgment that awards plaintiff attorneys' fees, costs in preparation for trial and taxable costs.

Plaintiff's assignments of error are as follows:

"1. Appellant assigns as error Finding of Fact 6(a) and all conclusions of law dependent thereon and the judgment insofar as it treats the one-half interest in the N-Bar Ranch as separate instead of community property for the reason that it is community property.

"2. Appellant assigns as error Finding of Fact 6(b) and all conclusions of law dependent thereon and the judgment insofar as it treats the Western States Drilling stock as separate rather than community property on the ground that this stock is community property."

The defendant points out and the plaintiff admits that a mistake was made in the designation of the Findings of Fact appealed from. It is readily apparent that the first assignment refers to Finding of Fact 6(b) and the second assignment refers to Finding of Fact 6(c). These errors are not fatal under the surrounding facts and circumstances as they did not mislead or affect the substantial rights of the parties. However, defendant contends that even if the assignments of error referred to the correct Findings of Fact, the assignments are wholly inadequate in that they do not "distinctly specify each ground of error relied upon" as required by Rule 5(c) of the Rules of the Supreme Court, 17 A.R.S. Strictly speaking we are of the opinion that defendant's contention has merit, but these assignments of error, though poorly drawn, may be taken as an attempt to urge the insufficiency of the evidence to sustain the Findings of Fact and Judgment. Therefore, we will consider plaintiff's assignments as sufficient to present this issue to the Court, even though it will require a great deal more time and effort to search out the grounds relied upon and the evidence relating thereto.

The findings of the trial court complained of are as follows:

"6. That the defendant owned at the time of the marriage of the parties, or thereafter acquired by the

use of his separate funds, the following items of property:

\* \* \* \* \* \*

"(b) A one-half partnership interest in the N-Bar Ranch located in New Mexico, of the value of $56,913.00 \* \* \* [Description of property].

"(c) 10 shares of stock in Western States drilling Company, located in Phoenix, Arizona, of the value of $7,000.00."

The trial court found, and the plaintiff does not deny, that E. G. Kingsbery, father, and John R. Kingsbery, son (defendant) purchased the N-Bar Ranch as a partnership venture, each owning one-half interest thereof. The only question relating thereto is whether the son's half interest is separate or community property.

Plaintiff's contentions in support of the community aspect of this problem may be briefly summarized as follows:

1. That the property was acquired during coverture and is controlled by the fundamental presumption that all property so acquired is community.

2. That the father made the down payment and the son, in consideration therefor, furnished some credit and his efforts in purchasing and financing the enterprise; that he received "onerous title" thereto and; therefore, there was no gift from father to son.

3. That the increase in value was the product of years of effort on the part of the husband.

4. That even if it was separate property in the beginning it was transmuted to community property for the following reasons:

(a) That the purchase of the property was predominantly handled as a community transaction.

(b) That the plaintiff joined in the execution of some of the notes and mortgages involved in the financing program.

(c) That community money and defendant's separate funds were commingled in the community bank account.

On these grounds and for these reasons the plaintiff asserts that there is not sufficient evidence to sustain the findings and judgment appealed from.

■ We are aware of the presumption that all property acquired during coverture is presumed to be community, but disagree with the plaintiff's sweeping application thereof. To say that it is the determining factor in this case is not true. This presumption is a rebuttable one and is dependent upon the facts and circumstances in each case. To begin with, we are confronted with the Findings of Fact of the trial court who heard the evidence, consisting of about 2,000 pages of testimony. Under such circumstances the evidence will

be taken in the strongest manner in favor of defendant and in support of the court's findings and judgment, and will not be disturbed when there is any reasonable evidence to support it. Smith v. Smith, 89 Ariz. 84, 358 P.2d 183; Winterton v. Lannon, 85 Ariz. 21, 330 P.2d 987; Church v. Meredith, 83 Ariz. 377, 321 P.2d 1035.

■ It is our steadfast rule that we will not disturb the findings and judgment of the trial court based upon conflicting evidence, whether tried to the court or a jury. Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P.2d 617; Winterton v. Lannon, supra.

■ As an appellate court we must assume that the trial court took into consideration the community property presumption in making the findings complained of and we must further assume that all of the evidence, including the testimony of the defendant, tending to support the judgment, is true, unless the same is inherently impossible or improbable and if two inferences may be drawn we must accept the one chosen by the trial court. Goff v. Guyton, 86 Ariz. 349, 346 P.2d 286.

Guided by these principles, which have long been accepted by this Court, let us consider plaintiff's objections to and the reasons for the appeal from the findings and judgment. Her contention is that there was no gift from father to son; that the father put in cash and the son furnished his idea and effort; that the father took half interest for the money and the son took half interest for his services to the enterprise and its financing. In other words, the contribution of one was the consideration for the contribution of the other and the defendant thereby acquired this property by "onerous title" and it is therefore community.

There is little or no evidence to support this theory of the case, which in effect is tacitly admitted by plaintiff in her brief as follows:

"* * * it is simply inconceivable that the father gave half of the down payment to the son without expecting something in return. What he expected was exactly what he got, namely that the son would put the deal together and make it go. * * * if there was any gift at all * * * the product is community. *And it is not necessary for this Court to weigh the facts to come to this conclusion; the presumption does it for us*". (Emphasis supplied.)

Plaintiff's conclusion is based upon what appears to be an exaggerated version of defendant's activities relating to the ranch that is not supported by the record. In the first place the details of the sale were worked out before the defendant knew anything about the property and presented to him as a package deal, and the ranch was purchased by the father and son partnership

under an oral contract between the parties to become equal owners therein. There is competent evidence that the defendant took no part in the operation of the ranch, except that he purchased sheep therefor and expended $12,500 for improvement thereon from his separate funds; that he and his father sold parcels of the land involved and applied the proceeds on the purchase price of the property. When needed to make purchase payments they obtained loans, secured by the continuing guarantees of the father and encumbrances on the separate property of the son; that the defendant operated and managed 45 restaurants in four states, at a good salary, all of which was used for community purposes; and that the ranch, as a stock-raising business, was operated under the management and control of John Lincoln, who was to receive a one-third interest therein if successful and able to pay the outstanding indebtedness thereon. This venture showed a loss for each of the years operated, except there was a capital gain on the land. It was purchased for $3.00 and sold for $3.50 per acre. This profit was a direct result of the increase in value of land in the western states from 1952 to 1957, aided by the improvements placed thereon, and not the product of the time and effort of the defendant as claimed by the plaintiff.

The evidence shows that the defendant used his separate funds to buy sheep and place improvements on the land, as an integral part of this partnership venture. It is not necessary that we know precisely how the learned trial judge reached the finding of fact that the N-Bar Ranch was acquired by his separate funds. He could have so found on the evidence that the defendant's father gave one-half of the down payment to his son, or that the defendant put his separate funds into the purchase of sheep and improvements on the property in return for the one-half interest in the land. In either case, the defendant's interest in the land would be separate, not community property and the finding based on either one or both of these conclusions is supported by reasonable and competent evidence and under the rules above announced we are bound thereby.

Plaintiff places a great deal of emphasis upon the asserted fact that the ranch purchase was predominantly handled as a community transaction. From the record it would appear that it was predominantly handled as a separate transaction. The deed conveyed the property to the defendant "as his sole and separate estate." A number of other instruments dealing with the ranch land were signed by, or ran to, the defendant alone. In all cases when money was borrowed for purchase payments the father was either an endorser on the note or liable under continuing guarantees signed by him in the sums of $175,901.60 and $158,000.00 and/or the defendant's Midcity Realty Co. stock was pledged. Any default in the

payment of any of said sums would have resulted in financial loss to the father and on the son's separate property.

It is true that the plaintiff joined her husband in the execution of a note and mortgage on the subject property for a part of the purchase price in the sum of $175,000.00, but defendant claims, and plaintiff does not deny, that her signature was placed thereon at the instance and request of the lender and not under the direction of the husband. The down payment as found by the trial court was by the use of defendant's separate funds. In Horton v. Horton, 35 Ariz. 378, 278 P. 370, we said:

"And when the part of the purchase price is separate funds and the balance is borrowed on a mortgage on the property and a note signed by both spouses at the instance of the mortgagee, as between the spouses, unless the mortgage was afterwards paid from community funds, the property is separate. (Citing cases)"

And see: Porter v. Porter, 67 Ariz. 273, 195 P.2d 132. The other mortgages were signed by the defendant alone and the mortgages against the N-Bar Ranch were paid off out of defendant's separate funds, or his father's funds, or by sale of portions of the ranch, so that the property still has and retains its status as separate property.

Another ground urged by plaintiff in support of the transmutation from sep-arate to community property is the commingling of community funds with separate moneys of the defendant in the community bank account. There is no doubt that such funds were in the same bank and in the same account. As to the amount of money in each account, the separate funds were far in excess of the community receipts. That part of the rule relating to the commingling of funds as applied to the facts in this case is as follows:

"Where separate and community property are confused or blended so that the separate property cannot be identified, the presumption in favor of the community casts the whole into the community. It has been held that this result is not entailed where the community component of the intermixture is comparatively small. In any event, the loss of the separate property results from the presumption in favor of the community *in the absence of identification of the separate property, and not from the mere fact of intermixture*." (Emphasis supplied.) Porter v. Porter, 67 Ariz. 273, 282, 195 P.2d 132, 138.

The testimony of the defendant supported by some 19 exhibits traces in detail the date, source and amount of each item of separate money coming into the account and the date, amount and to whom each expenditure was made. Here is evidence that could have

been accepted and relied upon by the trial court.

"The rule in effect that the commingling alone is not sufficient to stamp the whole with the community status, but only when the commingling results in confusion and to loss of identity of separate items entering into the combined fund and the lack of sufficient records or evidence from which the Court may determine which portion of the combined fund is separate and which is community is well stated in 31 C.J., Husband & Wife, sec. 1161; 41 C.J.S., Husband and Wife, § 495: 'Mere mutations of form ·do not of themselves work a transmutation of the character of property, as being community or separate, after once it has been cast either into the community, or to the separate estate of the husband or the wife; and the same is true of the commingling of separate and community property, the separate property running separate as long as it can be identified. It is where, by such processes, the identity of separate property is lost that, by the operation of the presumption in favor of the community, a transmutation takes place.'

\*       \*       \*       \*       \*       \*

"*In applying the above rules of law to the facts of this case it must be borne in mind that we take the evidence in the strongest manner in support of the judgment of the lower Court.*" (Emphasis supplied.)   Porter v. Porter, supra, 67 Ariz. at 282–283, 195 P.2d at 138.

■   An examination of the foregoing quotation reveals that *in the application of the legal presumption that all property acquired during marriage is community, it must be borne in mind that we take the evidence in the strongest manner in support of the judgment of the lower court* and not not the construction thereof as urged by plaintiff.   Under the rules announced we find there is ample evidence to sustain the court's finding and judgment relating to the N-Bar Ranch.

It is undisputed that the defendant bought ten shares in Western States Drilling Company with his separate funds obtained by pledging his Midcity property stock as security therefor; and that the defendant, from time to time, made loans to this company as shown by various checks drawn on the community account, payable to Western States Drilling Company.   The evidence further shows that all of the loans have been repaid and the community account reimbursed; that the stock of the Company has not increased, but in fact has decreased in value from $10,000 to $7,000.

■   Plaintiff urges that under the doctrine of commingling of community and separate funds the whole thereof becomes

community and the loans made from such account resulted by operation of law in a transmutation of the stock from separate to community property. In Pendleton v. Brown, 25 Ariz. 604, 221 P. 213, this Court announced the rule, which we still adhere to, that "the character of the property, as to being separate or community, becomes fixed at the time it is acquired \* \* \*." Further, "when the status is once fixed, the property retains its character until changed by agreement of the parties or by operation of law." Porter v. Porter, supra. See also Horton v. Horton, supra.

This rule is further amplified in Flynn v. Allender, 75 Ariz. 322, 256 P.2d 560:

"After property purchased on credit or with borrowed funds has acquired the status of separate property of one of the spouses at the time of purchase, its status remains such regardless of the nature of the funds which thereafter satisfy the obligation, whether community funds or separate funds of the other spouse."

If the funds loaned to this company belonged to the community what effect, if any, would these loans have on the transmutation of this stock from separate to community property? The answer is none.

We have recognized the principle that the community, when it advances funds to improve the separate property of one of the spouses, would have a claim against the separate estate for the amount so contributed, and no interest in the title of the property itself is acquired by such advances. See Blaine v. Blaine, 63 Ariz. 100, 159 P.2d 786 and Rothman v. Rumbeck, 54 Ariz. 443, 96 P.2d 755. The loans or advances have been fully paid and the stock remains the separate property of the defendant, with no liens thereon in favor of the community.

The only issue involved in defendant's cross appeal is—did the trial court exceed its authority in awarding the plaintiff $7,-000.00 attorneys' fees and $6,000.00 suit costs and taxable costs in the final judgment? If such power exists it must be based upon contract or legislative act, as no such right existed at common law. It appears that the stipulation of the parties as to attorneys' fees might well be construed to cover this item in the judgment, but probably may fail to authorize the inclusion of costs and expenses. However, this aspect of the matter would not solve the real question presented to this court for the first time. Since there is no contract we must look to our statutes relating to this problem to ascertain the jurisdiction conferred thereby. Section 25–315, A.R.S. reads as follows:

"During pendency of an action for divorce, the court may in its discretion require the husband to pay as alimony money necessary for prosecution of the

action, or for attorney's fees, or for support and maintenance of the wife or minor children of the parties. The court may make temporary orders respecting the property of the parties or the custody of the children of the parties, as may be necessary."

Defendant's interpretation of this statute, relying on cases from California and New York, is that it gives the court power to award suit money and attorneys' fees during pendency of the action and which cannot, under the terms of our statute, be awarded in final decree; that the words "money necessary for prosecution of the action" gives the court no authority to base an award on past service, or for money already expended, for the reason that there can be no necessity for an allowance to make a defense which has already been made, or to pay expenses which have already been incurred. The defendant fails to make clear or point out the exact moment when the action is no longer pending and is ended. It appears the answer may be found in the meaning of the phrase "During the pendency of an action for divorce" as used in our law.

Section 25–321, A.R.S. provides:

"The court may from time to time *after entry of final judgment, on petition of either party, amend, revise and alter the portions of the ·decree which relate to payment of money for the sup-port and maintenance of the wife or the expenses of the proceedings, as may be just * * *.*"* (Emphasis supplied.)

By the terms of this statute the jurisdiction of the Court is extended beyond the final judgment to do certain specified things such as "amend, revise and alter" alimony and expenses of proceedings. Can it be said that the action is still pending during the determination of these matters which are instituted in accordance with such statutory provisions? The answer seems obvious.

In Stanley v. McKenzie, 29 Ariz. 288, 240 P. 1033, and Long v. Long, 39 Ariz. 271, 5 P. 2d 1047, this Court in each case refused to grant a petition for alimony after final judgment on the ground that the jurisdiction given the courts by what is now Section 25–321, supra, does not apply when the final decree of divorce contains no provision for alimony, for the reason there is no provision contained therein to "amend, revise or alter". The same principle is applicable to "expenses of proceedings".

If defendant's interpretation of Section 25–315, supra, is correct that no such sums can be allowed in the final judgment, but must be allowed by pendente lite orders, then the provisions of Section 25–321 are contradictory to Section 25–315 in some respects and other provisions thereof are rendered meaningless.

As we said in Powers v. Isley, 66 Ariz. 94, 183 P.2d 880, and approved in Cummings

v. Lockwood, 84 Ariz. 335, 339, 327 P.2d 1012, 1015:

"The several provisions of the statute should be construed together in the light of the general purpose and object of the act and so as to give effect to the main intent and purpose of the legislature as therein expressed. If possible, a statute should be so construed as to render it a consistent and harmonious whole; if different portions seem to conflict they should, if practicable, be harmonized, that construction being favored which will render every word operative rather than one which makes some words idle and nugatory. In other words, a statute must receive such construction as will make all its parts harmonize with each other, and render them consistent with its general scope and object."

The evident purpose of these statutes is to insure that the wife may have the proper means to litigate a pending divorce action and the provisions of Section 25–315 and Section 25–321, should be construed together to give effect and meaning to both. We hold that Section 25–321 extends the jurisdiction and gives the Court power to determine the certain matters therein enumerated after judgment and as to those matters the action is still pending within the meaning of the provisions of both sections. Pendente lite orders still have their place in obtaining advance costs and fees, but the judgment plays its part in the determination of the matters involved and the inequities arising therefrom may be corrected in proceedings after judgment.

The judgment on appeal and cross-appeal is affirmed.

STRUCKMEYER and JENNINGS, JJ., concur.