NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

KATHY CHAUNCEY, *Petitioner/Appellant,*

*v.*

THOMAS W. CHAUNCEY, II, *Respondent/Appellee.*

JAMES BLOMO, *Intervenor.*

No. 1 CA-CV 19-0696 FC

FILED 3-4-2021

Appeal from the Superior Court in Maricopa County
No. FN2017-002676
The Honorable Justin Beresky, Judge

**AFFIRMED**

COUNSEL

Jeffrey G. Pollitt, P.C., Phoenix
By Jeffrey G. Pollitt
*Counsel for Petitioner/Appellant*

Dickinson Wright PLLC, Phoenix
By Robert L. Schwartz, Leonce A. Richard III, Bradley A. Burns
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1 Kathy Chauncey ("Wife") appeals from the family court's judgment in this high-net-worth dissolution matter. She asserts the family court committed legal error in assigning Thomas W. Chauncey, II ("Husband") certain assets as his separate property. After a thorough review of the sealed record, we find no abuse of discretion.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Husband and Wife met when Wife was training horses on her parents' Arabian horse farm. The parties married in 1972. They had no children, and no pre- or post-marital agreements were sought or completed. The parties maintained separate bank accounts after the first year of marriage. Although Husband had numerous financial accounts, Wife was a signatory on only two: a donation account and an account for construction-related expenses on one of their ranches.

¶3 Husband, at the beginning of the marriage, worked in various capacities for radio and TV stations. After graduating from law school and for much of their marriage, Husband practiced law in Phoenix. By 1973 or 1974 Wife did not work.

¶4 Husband is a person of significant personal wealth. Between 1982 and 1996, Husband's father ("Tom Sr.") gave him several substantial gifts. After Tom Sr. died in 1996, Husband and two of his sisters each received one-third of Tom Sr.'s estate. Each sibling took their share as their separate property and continued to manage it that way.

¶5 The majority of Tom Sr.'s estate was held in a family limited partnership ("Partnership"). Through the development and appreciation of assets, the Partnership's value tripled. Before it was closed in 2014, the Partnership made very significant distributions to each sibling.

¶6 Husband used his separate funds to acquire "dozens" of other assets, either with or without his sisters' involvement. Those assets had

bank accounts solely in Husband's name. Meanwhile, Husband also sold assets and used those funds to acquire new assets. While the four residential properties Husband purchased were gifted to the community, Wife was not associated with any other asset except one cattle entity.

¶7 In 2017, after more than 40 years of marriage, Wife filed for dissolution. Wife, at the time of trial, was 70 years old and disabled due to a chronic lung condition. Husband was 71 and still working as an attorney.

¶8 As Husband began to prepare for trial and, more specifically, for the tracing of his separate property, he realized that much of his recordkeeping over the years had been destroyed. Husband rigorously searched for documents from other sources including attorneys, accountants, various business partners, his employer, his siblings, and governmental records.

¶9 Husband hired Certified Fraud Examiner and Master Analyst in Financial Forensics Chris Gorman to trace the flow of his assets from acquisition to present. Wife hired Certified Public Accountant Josephine Giordano, of Kotzin Valuation Partners, to review and critique Gorman's analysis. Expert reports were exchanged and updated as additional documents became available.

¶10 By the time of trial, Gorman had reviewed over 26,000 pages of documents and interviewed numerous witnesses. Gorman testified that while this case presented the most complex tracing of his career, he was "extremely" confident in his analysis and believed he had all the evidence needed to complete the tracing analysis. Gorman's analysis purported to trace "the current assets held by [Husband] back to the point at which [Husband] received the separate property via inheritance."

¶11 In their joint pretrial statement and at the evidentiary hearing, the parties reported reaching some property agreements. Husband agreed that certain pieces of real property, personal property, and certain financial accounts were community property. He further agreed certain jewelry, art, vehicles, and silverware were community property. Wife agreed certain property, including artwork, was Husband's separate property. After these agreements, there remained a large amount of disputed property in various forms.

¶12 A bifurcated trial was held. The first four days consisted primarily of evidence aimed at characterizing the remaining disputed property as community or separate. Wife testified that Husband excluded her from most financial decision-making. She vacillated as to what and

3

when she knew about the gifts and inheritance but remembered the sale of some significant Partnership assets held by Husband and his sisters. Wife also knew Tom Sr. had not left her an inheritance.

¶13 Husband and Gorman each testified.[1] Gorman testified at length. He traced Husband's finances entity by entity and account by account and examined twenty-nine entities and over thirty financial accounts.

¶14 Husband had three "clearing accounts" in which he always deposited his community earnings.[2] The majority of the funds in that account, however, were his separate property. Gorman looked at the detailed day-to-day input and output of the community monies and opined that commingling could not have happened because "at all times" the community earnings were insufficient to cover community expenses and had no time to build up. Wife testified she knew Husband's earnings were not enough to pay their living expenses. After consideration of both Husband's earnings and the community expenses, Gorman concluded that the community's expenses dwarfed Husband's community earnings and the "only possible source of this influx of funds was Husband's separate property."

¶15 In response, Giordano testified to alleged factual and legal problems in Gorman's report. More specifically, Giordano asserted Gorman lacked a sufficient factual basis to "directly trace" Husband's separate property. Giordano stated that

> The Gorman Report fails to properly acknowledge that missing bank activity, lack of adequate and reliable source documentation, reliance on Husband's representations when source documentation [was] not available, and a "reasonable tie" to a funding source, impacts the reliability and

---

[1] Several other factual witnesses also testified for Husband. Those included attorneys and accountants who had been involved in assisting Husband, sisters, or Tom Sr. over the years.

[2] The clearing account operated much like a common checking account, meant to cover the day to day expenses of the community. Over time, there were three clearing accounts; with changes often caused by bank restructuring. Generally, only one clearing account was in use at a time. For ease of reference we refer to the clearing accounts collectively as "clearing account."

supportability of the Gorman Report's conclusions that certain assets were directly traced to Husband's sole and separate property under Arizona law.

She argued that once made, that flaw affected all downstream conclusions. Giordano concluded that "The tracing analysis performed in the Gorman Report does not appear to meet the requirements of Arizona law with respect to a direct and explicit analysis." Giordano objected to the use of Husband's testimony in lieu of physical records.

¶16         Gorman countered the claim that gaps in documentation nullified his entire analysis with the following quote from an American Academy of Matrimonial Lawyers article:

> Sometimes the best records that exist will leave gaps in the chain. Through no fault of the proponent each dot cannot be connected . . . . If generally accepted accounting procedures, GAAP, can identify the separate portion of an asset to a reasonable degree, that testimony should be sufficient to establish the separate nature of the property.

Gorman stated the quote was consistent with accepted accounting practices for tracing monies and assets.

¶17         The court adopted Gorman's tracing methodology and ruled that Husband presented clear and convincing evidence of the disputed property's separate character. The court found the witness testimony credible and stated that "ample" documentation supported Husband's claims, despite the gaps in documentation. Further, as required under Arizona Revised Statutes ("A.R.S.") section 25-213(A), the increase in value in Husband's share of the Partnership was found to be his separate property because it was "not the result of the individual toil, effort or community resources of Husband." The community benefited from Husband's separate property, which was used "to purchase various real property and certain entities and investments," some of which was gifted to the community, enhanced the community's value, and funded the parties' wealthy lifestyle.

¶18         The second portion of the trial divided the community property, spousal maintenance, and calculated the equalization payment due to Wife. The court found that although Wife was statutorily eligible for spousal maintenance under A.R.S. § 25-319(A), she had sufficient financial resources to support herself for the remainder of her life without exhaustion.

¶19        Wife moved to amend the judgment. She challenged the court's tracing methodology and the factual findings because the minute entry did not point out the witness testimony it relied on "in the absence of documentary evidence." The court denied the motion without comment. A judgment was entered, and Wife was awarded partial attorneys' fees pursuant to A.R.S § 25-324. Wife timely appealed.

## DISCUSSION

¶20        On appeal, Wife asserts the family court abused its discretion in holding that Husband successfully and sufficiently traced his sole and separate property. She argues Husband failed to "substantiat[e] each transaction in the chain from his inheritance to the assets he claimed as separate property" and that the court must have erred "by employing an indirect tracing analysis to conclude Husband met his burden to the 'highly probable' and reasonably certain degree required under the standard." We disagree with her legal argument and find sufficient findings of fact supported the court's decision.

I.        The Controlling Dissolution Statutes and Our Standard of Review

¶21        Two primary statutes control the character of property in a marital dissolution. The first statute is the general community property presumption that all property acquired during a marriage is presumed community property except for property that is "acquired by gift, devise or descent." A.R.S. § 25-211(A)(1). In other words, the property passed to a husband or wife due to the death of another person or received as a personal gift is that spouse's separate property. *Id.*; *see also* A.R.S. §§ 14-1201(14) (devise), -2101(A) (succession is controlled by statute unless modified by a written instrument). The second statute regarding the character of property in a marital dissolution clarifies that any increase in the value of that separate property is also that spouse's separate property. A.R.S. § 25-213(A).

¶22        On appeal, the property's characterization is a question of law, which we review de novo. *Helland v. Helland*, 236 Ariz. 197, 199, ¶ 8 (App. 2014). We view the facts in the light most favorable to upholding the family court's decree. *See Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 522, ¶ 2 n.1 (App. 2007); *Bowser v. Nguyen*, 249 Ariz. 454, 456, ¶ 8 (App. 2020); *Thomas v. Thomas*, 142 Ariz. 386, 392 (App. 1984).

II.      Transmutation and Husband's Burden of Proof

¶23      Our review here is limited to the property left disputed after consideration of the parties' prior concessions.  The nature of property as separate or community is established at the time of its acquisition and can only be changed by agreement or operation of law.  *Bender v. Bender*, 123 Ariz. 90, 92 (App. 1979).  Husband received the 1996 inheritance as separate property.  Given the presumption in A.R.S. § 25-211(A)(1), Husband bears the burden to show by clear and convincing evidence that the property was never transmuted into community property by agreement, gift, or commingling.  *See In re Marriage of Cupp*, 152 Ariz. 161, 164 (App. 1986).  To this end, Wife argues Arizona law requires "nearly conclusive evidence" of the separate nature of the property.  Wife overstates the legal standard.

         A.      Not Transmuted by Agreement or Gift

¶24      We need not address whether the parties agreed to convert any additional disputed property into community property because Wife did not raise that argument below.  *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994).  The court found Husband conceded gifting some of his separate property to the community—particularly in the form of real property—and those gifts increased the value of the community and were subject to division.  The community gifts do not affect the separate property nature of the remainder of Husband's assets.  *See Battiste v. Battiste*, 135 Ariz. 470, 473 (App. 1983).

         B.      Not Transmuted by Community Effort

¶25      Wife does not present an argument on appeal as to how the community contributed to the value of Husband's separate property.  *See Tester v. Tester*, 123 Ariz. 41, 44 (App. 1979).  The court found no evidence of community involvement.  Neither do we.

         C.      Not Transmuted by Commingling

¶26      Husband's clearing account is the only specific asset Wife challenges.  She asserts Husband unilaterally managed the community's income and assets and commingled funds "without maintaining detailed and contemporaneous records."  But separate property does not lose its separate character, even if commingled with community property, so long as the separate property is identifiable.  *Cupp*, 152 Ariz. at 164.  Commingling only transmutes separate property when the identity of the property is lost.  *Id.*  As Gorman's analysis shows, such was not the case.

¶27        Wife was responsible for paying community expenses. Husband reimbursed her only from his clearing account. The clearing account regularly required "significant" contributions from Husband's separate funds to cover their community expenses. There is no evidence Husband ever used any other account. "[A]t all times," the community spending exceeded the community's contributions.

¶28        Finally, we are not persuaded by Wife's assertion that Husband had to prove all the clearing account transactions were "unclouded by community funds." The correct legal standard is clear, satisfactory, and convincing evidence, which Husband met. *See Bourne v. Lord*, 19 Ariz. App. 228, 231 (1973).

¶29        As stated above, the clearing account is the only specifically challenged source. Wife conceded or failed to challenge the other assets and accounts with specificity.[3] The identity of Husband's other separate property once established by Gorman and accepted by the court, therefore, could not be lost via commingling. *See, e.g.*, *Guthrie v. Guthrie*, 73 Ariz. 423, 426 (1952). We find no error in the family court's decision that Husband's assets were not commingled to the point of transmutation.

III.    Gorman's Tracing of the Disputed Property

¶30        Tracing is the crux of Wife's argument. Wife never challenged the veracity of any of Husband's fact witnesses, his expert's qualifications, or the validity of Husband's documents. Instead, her position rests on the theory that Husband's evidence contained legally insurmountable gaps in the tracing of his separate property. That argument has both a factual and a legal element, although neither persuades us.

        A.    The Factual Element

¶31        In support of Husband's factual assertions, Gorman testified to his review of over 26,000 pages of documentation. His analysis included estate and personal "tax-returns, K-1s, bank records, brokerage statements, canceled checks, personal ledgers, recorded documents, various agreements, and records of the entities." Husband's Social Security statements were introduced to show the range of Husband's community earnings over the life of the marriage and help determine the extent the community expenses exceeded or affected those earnings. The result, according to Gorman, was that community expenses exceeded earnings by

_____

[3]        Wife's expert admitted that Gorman successfully traced five pieces of real property and some municipal bonds.

up to 500 percent. Gorman concluded that Husband's earnings were *de minimis* when considering the totality of the clearing account. The court agreed, and we accept the court's conclusion that the evidence was "abundant" as to the role of Husband's separate property in the clearing account. *See Porter v. Porter*, 67 Ariz. 273, 282 (1948).

**¶32** We review rulings on the admissibility of evidence for an abuse of discretion. *Link v. Pima County*, 193 Ariz. 336, 338, ¶ 3 (App. 1998). We find the superior court did not err in considering the evidence or the reasonable inferences made by Gorman. *See Thomas*, 142 Ariz. at 392. The court, as the ultimate factfinder, was free to adopt Gorman's opinion when it determined the credibility and weight to give the conflicting expert opinions. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

B.      The Legal Element

**¶33** For decades Arizona law has required the explicit tracing of proof of origin for any commingled property claimed as separate. *See Porter*, 67 Ariz. at 281; *Cooper v. Cooper*, 130 Ariz. 257, 259 (1981). The court determines, depending on the circumstances of each case, what level of specificity in the evidence is required to show that separate property has remained so. *In re Marriage of Molloy*, 181 Ariz. 146, 150 (App. 1994).

**¶34** Gorman stated he used a direct-tracing methodology, a standard accounting practice, to trace Husband's separate property.[4] Direct tracing uses testimony and documents to tie a matched asset to its prior property source.[5] While it is true that Gorman also used two indirect tracing methods—recapitulation and "marital-assets-out-first"—the indirect methods were used to confirm the reasonableness of his conclusions. Ultimately, the court found Gorman's tracing methodology met the "direct and explicit tracing" standard. It agreed with Gorman's

---

[4]     During his testimony Gorman clarified that "direct tracing" is an accounting term. "Explicit tracing" is a legal term.

[5]     There are two direct tracing subtypes: single-instance direct tracing and serial and compound direct tracing. Gorman used both in tracing Husband's assets. Single-instance direct tracing is the simplest form of tracing and occurs when one asset is directly linked to another. Serial and compound direct tracing occurs when there are a series of transactions that are interrelated and increasingly complex.

conclusions and found Husband had proved his assets' separate nature by clear and convincing evidence.

¶35      Wife criticizes Gorman's Report and his methodology. She argues the court committed legal error in its alleged use of indirect tracing methods. Wife argues Gorman could not have conducted a "direct tracing" as he claims because there were "*multiple years of missing documentary evidence* for the most relevant of all the accounts [the clearing account] during the 46-year marriage." (Emphasis in original.) The cases cited by Wife do not support a rigid requirement that explicit tracing requires paper documentation to trace every transaction, dollar-for-dollar, over a forty-year marriage. *See Cooper*, 130 Ariz. at 260; *Roden v. Roden*, 190 Ariz. 407, 411 (App. 1997) (superseded in part by statute on other grounds); *Porter*, 67 Ariz. at 279.

¶36      Courts are permitted to look at both direct and circumstantial evidence to arrive at whether an asset has maintained its identity as separate property, so long as the separate nature of the asset is proven by clear and convincing evidence. *See Bourne*, 19 Ariz. App. at 231. Paper documentation serves as direct evidence in tracing funds, and over 26,000 documents were produced in this case. But where documentation had been lost or destroyed, the court could rely on "witness testimony which clearly and convincingly establishes a fact in the absence of documentary evidence," as it found the evidence "to be acceptable and reasonable in supporting the tracing of a particular asset or to bridge a gap that is buttressed by ample documentary evidence." *See Kingsberry v. Kingsberry*, 93 Ariz. 217, 223-24 (1963) (court found the husband had explicitly traced his separate funds through his testimony and documentary evidence).

¶37      "On appeal, we do not reweigh the evidence but defer to the family court's determinations of witness credibility." *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). Because the family court is in the best position to assess and resolve conflicting evidence, we accept its factual findings absent clear error. *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). The court properly exercised its discretion in weighing the experts' opinions and considering the different methodologies they used. *Id.* ("If an expert fails to calculate the value of an asset according to standard methodology, that failure goes to the weight of the expert's opinion, not the admissibility."). The court may even, in its discretion, "adopt portions of the evidence from different witnesses." *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 233 Ariz. 355, 362-63, ¶ 25 (App. 2013) (internal quotation omitted). The court found Gorman credible and rejected Giordano's requirements as too restrictive.

¶38 We have reviewed the sealed record and find no abuse of discretion by the family court. Between the years of 1996-2016, Husband earned a total of $3.3 million in community income, compared to the about $32.2 million he received in sole and separate distributions. During that same period, the community expended about $14.4 million. In any given year, the community expended over two times, and often, more than five times as much as Husband earned in community income. The superior court found that in many years, the community expenses exceeded Husband's annual income within only the first couple months of the year. Clearly, Husband's "salary was at all times inadequate for the maintenance of community expenses" and as a result, he drew from his separate funds "to meet the deficiency of the household needs." *See Porter*, 67 Ariz. at 277. "Where separate and community property are confused or blended so that the separate property cannot be identified, the presumption in favor of the community casts the whole into community." *Id.* But such confusion does not arise when the community component of the intermixture is comparatively small, as is the case here. *See id.*

¶39 There was competent evidence in the record—including Husband's testimony—and reasonable inferences therefrom to support the family court's conclusion that the disputed property was clearly and unambiguously traced back to Husband's sole and separate property. For these reasons, the family court is affirmed.

IV. The Court's Findings of Fact Were Sufficient

¶40 Finally, Wife argues that the family court failed to provide sufficient findings of fact to support its result pursuant to Arizona Rule of Family Law Procedure 52. We disagree. The court provided a sufficiently detailed analysis when it cited and adopted Gorman's Report. *See Kelsey*, 186 Ariz. at 51 ("It must be clear from the findings how the court actually did arrive at its conclusions.").

**ATTORNEYS' FEES ON APPEAL**

¶41 On appeal, Wife requests attorneys' fees pursuant to A.R.S. § 25-324. Section 25-324 requires us to examine both the financial resources and the reasonableness of each party's positions. Although Husband has significantly more resources, Wife is in no way destitute. Like the court, we find Wife's position on the tracing of separate property unreasonable. To require near transaction-by-transaction documentation over a forty-year marriage is overly rigid. For these reasons, we deny Wife's request and

order each party to bear its attorneys' fees. Husband is awarded his costs on appeal after compliance with ARCAP 21.

## CONCLUSION

¶42      For the above-stated reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA