256 P.2d 560

**FLYNN v. ALLENDER.**
No. 5701.

Supreme Court of Arizona.
April 27, 1953.

Milburn N. Cooper, Phoenix, for appellant.

Robert E. Kersting, Phoenix, for appellee.

STANFORD, Chief Justice.

Margaret R. Flynn, plaintiff below, hereinafter designated appellant, appeals from a denial by the trial court of her motion to vacate an order quashing levy of a writ of execution and to grant a rehearing.

The facts are that Ellsworth Allender, defendant below, hereinafter designated appellee, and Frieda Allender, became indebted to appellant while they were husband and wife. Appellee and Frieda Allender were divorced on September 29, 1949.

Some time thereafter, but before February 16, 1950, appellant brought an action against appellee and Frieda Allender seeking to recover judgment against them for the sum of $1,000 together with interest at 6% from April 8, 1947. Judgment by default was taken by appellant for $1,000 together with interest as requested.

On the 16th day of February, 1950, appellee married his present wife, Ruth Allender. On August 8, 1951, appellee traded a 1947 Oldsmobile 98 Convertible automobile, which he owned at the time of his marriage to his present wife and which it is alleged by appellant was his sole and separate property, for a 1950 Model Oldsmobile Convertible Coupe. Appellee was allowed $1,095 on his 1947 Oldsmobile, and this together with $18 cash constituted the down payment necessary for the purchase of said 1950 Oldsmobile. The payments on the balance owing were made from the earnings of both appellee and Ruth Allender. At the time of this appeal the payments mentioned above amounted to some $683.65.

On March 12, 1952, appellant caused an execution to issue based upon the judgment she had obtained against appellee, and the sheriff levied on the 1950 Oldsmobile mentioned above, title to which was in appellee's name, as appellee's separate property.

Appellee filed a motion to quash the execution and to return said automobile to him, alleging as grounds for said motion that the automobile was the community property of appellee and his present wife, Ruth Allender, that the judgment held by appellant was based on a separate debt incurred by him before his marriage to his present wife, and that community property is not liable for the separate debts of either spouse or for any debts incurred by either spouse prior to marriage.

The trial court granted appellee's aforesaid motion to quash and ordered the automobile returned to appellee.

Thereafter, appellant filed a motion to vacate the order quashing the levy and to grant a rehearing. The trial court heard said motion and denied it.

We believe that the three assignments of error presented by appellant for our consideration may be grouped together as one.

It is claimed by appellant that the lower court erred in quashing the levy made on the 1950 Oldsmobile for the reason that said car was the separate property of appellee and subject to being taken in satisfaction of the judgment against him. She contends that when the appellee traded in his 1947 Oldsmobile on the 1950 Oldsmobile, the latter acquired the same character as the former, viz., it became appellee's separate property. In support of this contention, appellant cites the following cases which hold that generally property purchased by either spouse with separate assets will remain separate property. Rogers v. Joughin, 152 Wash. 448, 277 P. 988; Horton v. Horton,

35 Ariz. 378, 278 P. 370. See also 41 C.J.S., Husband and Wife, § 482, page 1020.

It is well settled in this jurisdiction that the character of property as separate or community is to be determined by its status as of the time of its acquisition. Lawson v. Ridgeway, 72 Ariz. 253, 233 P. 2d 459; Giacomazzi v. Rowe, 109 Cal.App. 2d 498, 240 P.2d 1020.

Section 63–302, A.C.A.1939, provides that:

"All property, both real and personal, of the husband, owned or claimed by him before marriage * * * shall be his separate property, * * *."

In view of this section, there is no doubt that the 1947 Oldsmobile was the separate property of appellee at the time he traded it for the 1950 Oldsmobile.

Appellee argues, and the lower court so held, that when appellee purchased the 1950 Oldsmobile by trading in his 1947 Oldsmobile, this constituted a commingling of separate property with community—the payments made on the 1950 Oldsmobile being taken from community funds—and that under a well-established rule of law the 1950 Oldsmobile thereby became community property.

We feel that this is not a proper conclusion to be reached from a study of the facts involved in this case. Unlike those cases in which this court has held that community and separate funds have been placed in a bank account or in property so that they cannot be distinguished one from the other and are therefore entirely community, the present facts indicate that at the time of acquisition of the 1950 Oldsmobile the down payment consisted entirely of separate funds of the appellee. This is true even though the $18 cash may have been community funds for the reason that said amount was so insignificant as compared to the $1,095 of separate funds as to be considered to have merged with the latter amount. We therefore hold that the 1950 Oldsmobile was the separate property of appellee at the date of its acquisition.

In 41 C.J.S., Husband and Wife, § 483, page 1023, we find the following statement which is appropriate to the facts herein:

"After property purchased on credit or with borrowed funds has acquired the status of separate property of one of the spouses at the time of purchase, its status remains such regardless of the nature of the funds which thereafter satisfy the obligation, whether community funds or separate funds of the other spouse. * * *"

In the footnotes under the above statement we find the case of Lincoln Fire Ins. Co. of New York v. Barnes, 53 Ariz. 264, 88 P.2d 533, 535. In that case a hotel lease was purchased by Mrs. Barnes for $185,000, $45,000 being paid in cash, which was the separate property of Mrs. Barnes, and the

balance evidenced by a note secured by a chattel mortgage. Plaintiff in that case contended that $100,000 was paid on the mortgage for the balance of the purchase price from community earnings, and therefore, the community had an interest in said lease. This court held that even if the $100,000 was community funds, that would not give the community an interest in the property. He further said that:

"At the most the community would have a lien on the property for the amount contributed by it, for the evidence does not show that the community at the time of the purchase of the lease had assumed any liability for the payment of the deferred installments of the purchase price."

The record, which consists of a stipulation by both parties of the facts, does not indicate that the community assumed the obligation of paying the balance owing on the 1950 Oldsmobile at the time it was purchased. The record merely shows that the balance owing was to be paid off on the installment plan.

■ We hold that the community has a prior lien against the 1950 Oldsmobile for $683.65 paid by it on the balance owing on said car prior to the perfection of appellant's lien by levy on the 1950 Oldsmobile. The order quashing the writ of execution should be vacated and the levy allowed to stand, subject to the condition that upon the sale of the car by the sheriff the lien of the community in the amount of $683.65 must be satisfied before any funds therefrom are used by appellant to satisfy her judgment.

The order quashing levy is hereby vacated and cause is remanded with instructions to allow the levy to stand in accordance with the principles hereinabove set forth.

PHELPS, LA PRADE, UDALL and WINDES, JJ., concur.