448 P.2d 76

**Marion E. NACE, Appellant,**

v.

**Harry L. NACE, Jr., Appellee.**

**No. 9187-PR.**

Supreme Court of Arizona.

In Banc.

Dec. 13, 1968.

Rehearing Denied Jan. 8, 1969.

Lewis, Roca, Beauchamp & Linton, by John J. Flynn, Robert A. Jensen, Roger W. Kaufman, Phoenix, for appellant.

Cavness, DeRose, Senner & Foster, by Jack C. Cavness and John W. Rood, Phoenix, for appellee.

McFARLAND, Chief Justice.

The plaintiff Marion E. Nace, hereinafter referred to as the wife, sued the defendant Harry L. Nace, Jr., hereinafter referred to as the husband, for divorce and custody of a child, alimony and child support, and a division of the community property.

After nine days of hearings, and voluminous testimony which resulted in hundreds of pages of text, the trial court granted the divorce to the wife, and custody of the child, with visitorial rights to the husband; the wife was also awarded $1,500 a month alimony and $400 a month for child support, the husband being further ordered to pay all medical expenses incurred by the child in excess of $500 per year, and maintain insurance to cover such expenses; the family home and improvements thereon (called "the Orangewood Property"), worth approximately $112,000, was given to the wife as her sole and separate property, with the husband ordered to pay the real estate taxes so long as the wife maintains her residence there. In addition, the wife was awarded $60,000 as and for her share of the community property.

The wife appealed from the judgment, and the husband cross appealed. The Court of Appeals reversed the trial court, awarding the wife $500,000 as her share of the community property, less $111,950, the value of the marital home, leaving a balance of $388,050, with interest, in lieu of alimony and the payment of real estate taxes. Nace

v. Nace, 6 Ariz.App. 348, 432 P.2d 896. The husband petitioned this Court for review of the decision of the Court of Appeals, which was granted.

The parties were married on June 1, 1956, and the marriage was more tumultuous than happy. No issue was born thereof, and evidently in an attempt to salvage their marriage from its dysphoric state, they adopted a minor son, Harry L. Nace, III. However, even this failed to bring harmony to the parties, and a complaint for divorce was filed by the wife on November 1, 1963.

For some twenty years prior to the marriage of the parties, the husband had managed the family chain of motion picture theaters, known as the "Nace Circuit," comprised of various corporations and partnerships. The husband's properties were found by the court to have had a value of $470,207 at the time of the marriage. Two years after the marriage, the husband received from his father's estate property valued at $1,135,959.

Substantial evidence of the husband's financial affairs was produced during the trial. All of the financial transactions were evidenced by checks and entered upon the various books of the husband's financial enterprises, which he collectively referred to as his "regular" account, or upon the books called his "special" account, and which he contended represented all community property transactions. Into the special account the husband deposited all of his salaries received from his business enterprises. The evidence also showed that the husband transferred $230,000 from his regular to his special account.

The issue before this Court is whether the trial court made a proper division of the community property. In deciding this question, the trial court first had to determine what was separate property and what was community property, and then make an equitable distribution of the community property.

The statutes of this State governing this matter have been interpreted by this Court on several occasions. A.R.S. § 25–213,

subsecs. A and B defines separate property as:

"§ 25–213. Separate property defined

A. All property, real and personal, of the husband, owned or claimed by him before marriage, and that acquired afterward by gift, devise or descent, and also the increase, rents, issues and profits thereof, is his separate property.

B. All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, and also the increase, rents, issues and profits thereof, is her separate property."

A.R.S. § 25–211 A defines community property as:

"§ 25–211. Property acquired during marriage as community property; exceptions; disposition of personal property

A. All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children while she lives separate and apart from her husband, is the community property of the husband and wife."

The well settled law in this State is that the separate or community character of property is determined by its status at the time of the marriage. Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893; Flynn v. Allender, 75 Ariz. 322, 256 P.2d 560; Porter v. Porter, 67 Ariz. 273, 195 P.2d 132; In Re Estate of Torrey, 54 Ariz. 369, 95 P.2d 990; Horton v. Horton, 35 Ariz. 378, 278 P. 370.

Once property has been identified as separate or community, it remains such as long as it can continue to be segregated. Porter v. Porter, supra; Kingsbery v. Kingsbery, supra; In Re Estate of Torrey, supra.

This Court has held that there is a legal assumption that all property acquired during marriage takes on a com-

munity nature unless clear and convincing proof is made that the property is inherently separate. Porter v. Porter, supra; Kennedy v. Kennedy, 93 Ariz. 252, 379 P.2d 966; Evans v. Evans, 79 Ariz. 284, 288 P.2d 775. However, the mere commingling of funds does not have the effect of destroying the identity of the husband's separate property as long as it can be identified. Porter v. Porter, supra. Property purchased during marriage with separate property remains such. Blaine v. Blaine, 63 Ariz. 100, 159 P.2d 786.

A.R.S. § 25–318, subsec. A states:

"On entering a judgment of divorce the court shall order such division of the property of the parties as to the court seems just and right, * * * without compelling either party to divest himself or herself of title to separate property, * * *."

The trial court found that the husband's separate property had increased in value partially because of his business judgment and management, and partially due to the inherent nature of the business or property. However, the trial court went on to say that it was unable to determine what portion was attributable to each factor and found all the increase to be community property.

The finding of facts and conclusions of law evidences that the trial court considered both the law and the facts in arriving at its finding. There is nothing in the record to indicate any abuse of judicial discretion by the trial court, and unless the evidence is of such a clear and convincing nature as to the abuse of its judicial functions, this Court will view the evidence and all reasonable conclusions drawn therefrom in a light most favorable to upholding the decree of the trial court. Todaro v. Gardner, 72 Ariz. 87, 231 P.2d 435; Spector v. Spector, 94 Ariz. 175, 382 P.2d 659.

Under our statute, A.R.S. § 25–318, subsec. A, supra, the trial court is not required to divide the property evenly, only equitably. Only where this discretion has

been abused will this Court interfere. Matlow v. Matlow, 89 Ariz. 293, 361 P.2d 648; Reed v. Reed, 82 Ariz. 168, 309 P.2d 790; Honig v. Honig, 77 Ariz. 247, 269 P.2d 737.

The court, in its findings of fact, stated that the property held by the husband at the time of the marriage was valued at $470,207, which, added to the $1,135,959 received from the estate of his father, made a total of $1,606,166. These assets having been acquired prior to the marriage and from his father's estate, became the husband's sole and separate property. A.R.S. § 25–213, subsecs. A. & B., supra. However, the Court found that:

"* * * during the parties' marriage, from 1956 until 1963, under the defendant's prudent efforts, the theatre syndicate prospered, to the extent that his personal net worth, based on his interests therein, had increased to $2,703,834 as of December 31, 1962, including the undistributed corporate dividends."

And that:

"* * * the net worth or value of defendant's separate property that he owned prior to this marriage or received from his father's estate, has increased, partly due to the continued exercise of defendant's unusual experience, business judgment and management, and partly due to the inherent nature of the business or property itself."

And that:

"The court is unable to determine what portion of this increase is attributable to the defendant's individual work and what portion is attributable to capital appreciation, and therefore the Court finds that all of said increase is the community property of the parties hereto."

From these findings, the court decided that a reasonable division of the community property for the wife would be the home known as "the Orangewood Property", and the sum of $60,000, making a total of approximately $171,950. It is this division that the wife contends to be inequitable. It was the husband's contention that any

increase in the value of the property was due to the inherent nature of the property, and did not constitute community property.

However, the wife contends all of the $230,000 transferred from the regular account to the special account became commingled and community property. She also contends the husband used a substantial sum from this amount for obligations not properly chargeable to the community funds, that he paid an obligation of $800 a month to his former wife for alimony and an additional amount for his mother and for the support of his two children by the prior marriage, for a total expenditure of $125,000, and approximately $74,000 more on personal expenditures. While the wife concedes in her brief that where the husband has no separate property, his obligation for alimony and child support arising from a former marriage may be satisfied from the new community, under the facts of this case, she alleges it should be chargeable to his separate property.

The record shows that the husband received an average salary of $48,500. The record also evidences, through expert testimony, that a reasonable sum for management of the properties, which the husband had at the time of the marriage and which was acquired from his father's estate, for a manager with the qualifications of the husband, would be between $25,000 and $40,000. This evidence was uncontradicted. Under this theory, both the increase attributable to capital appreciation and that resulting from the work of the husband, for which the community was paid a salary, should be chargeable only to the separate estate.

The evidence shows that in addition to an experienced management team, the husband had an associate and partner who was largely responsible for the operation of three of the most profitable theaters in the chain. There is no substantial evidence that the husband's skill was highly unusual. He was a competent man with able advisors and associates. The ability to listen and accept advice is indicative of an intelligent man, but this does not raise him above a normally competent business man so as to classify him *unusual* in matters of business judgment. For the sum of $40,000, the testimony evidences that a highly qualified manager could have been retained.

Further, the keeping of separate books by the husband indicates that no attempt was made to hide income by failing to record it in ledger books. All of this was done in order to maintain the identity of his various holdings.

Under the husband's theory of the case, all of his salary which was deposited in the special account was expended; in addition thereto, he deposited $230,000 from his regular account to the community account during the period of the marriage. This Court has held, in Porter v. Porter, supra, that:

" * * * commingling alone is not sufficient to stamp the whole with the community status, but only when the commingling results in confusion and to loss of identity of separate items entering into the combined fund and the lack of sufficient records or evidence from which the court may determine which portion of the combined fund is separate and which is community * * * "

Assuming as the wife contends in her brief, that the $230,000 which was deposited in the community account was then commingled and became community property, and that the husband used most of this amount for the support of his prior wife and children, support for his mother and other personal expenses, none of which was properly chargeable to the community, then the entire $230,000 is to be treated as community property. If we add to this the home which was awarded the wife, and valued at $111,950, we would have a total of $341,950; under the theory of the wife, she is then entitled to half of this amount, which would total $170,975. She was awarded property in the form of the marital home, valued at $111,950, and the sum of

$60,000, for a total of $171,950, which is more than fifty percent of the community property under the wife's theory of the case.

The lower court did not make its finding on this theory, but chose to determine from all of the facts of the case what it deemed would be equitable and just. However, it must be presumed the court considered all this evidence.

The wife contends in her brief that the community funds and separate funds were so commingled that it was impossible to distinguish between them, and that this finding was supported by the evidence, and stated that:

"* * * This court should not substitute its judgment for the judgment of the trial court and should affirm the trial court's ruling on this point."

The same rule of law, a presumption in favor of the trial court's findings, and that this Court should not substitute its judgment for that of the trial court applies to the equitable distribution in the case. The court found the distribution was equitable and therefore this Court should not substitute its opinion unless it finds the trial court abused its discretion.

Considering all of the facts of this case, it is understandable why the court made the ruling that it did, awarding the wife the home, with the taxes paid as long as she maintained it as her residence, and a cash sum of money and alimony. The wife was a show girl in Las Vegas at the time of the marriage. The record does not show that she ever had any business experience, nor that she would be capable of operating any part of the business. Substantial evidence was presented showing that the property was heavily encumbered by debts, and that a large part of the increase in value was due to the inherent nature of the properties, and we must assume that it would continue to need sound management in order to preserve the property. While $400, under any circumstances, would be adequate for the support of the child, with payment of all medical expenses over $500, the wife in her proposed finding of fact and conclusions of law requested $1700 per month alimony and $600 per month for child support. However, the court was indeed liberal in granting $1,500 per month to the wife. The court also provided for the payment of the real estate taxes on the home as long as she maintains her residence therein, which sum must be included as alimony. With the taxes estimated by the husband to be about $1,993.34 per year, almost $2,000, this would total approximately $24,800 a year, plus any medical expenses of over $500 for the child, which would certainly result in well over $25,000 a year ordered payable by the husband. The court made the $60,000 due in the amount of $10,000 per year. This makes a total of $35,000 per year to be paid by the husband during the ensuing six years.

This Court, in reviewing the evidence in detail, finds that the division of the community property, in which the wife was awarded the home valued at $111,950, and $60,000 as her share of the community property, a total of $171,950, is equitable. We therefore hold that the court did not abuse its discretion.

Decision of the Court of Appeals vacated, and the judgment of the lower court is affirmed, with the provision that the husband, as alimony, pay the taxes on the marital home so long as the wife lives therein.

UDALL, V. C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.