IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

*In re* the Matter of:

JENNIFER RENEE BRUCKLIER, *Petitioner/Appellee,*

*v.*

MICHAEL J. BRUCKLIER, *Respondent/Appellant.*

No. 1 CA-CV 21-0106 FC

FILED 8-25-2022

Appeal from the Superior Court in Maricopa County
No. FC2018-051050
The Honorable Alison S. Bachus, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Hallier Lawrence PLC, Phoenix
By Angela K. Hallier, Tabitha A. Jecmen
*Co-Counsel for Petitioner/Appellee*

Jones, Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride (argued)
*Co-Counsel for Petitioner/Appellee*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire (argued), Kristi Reardon
*Counsel for Respondent/Appellant*

---

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which
Vice Chief Judge David B. Gass and Judge Angela K. Paton joined.

---

**M c M U R D I E**, Judge:

¶1        Michael J. Brucklier ("Father") appeals from the decree
dissolving his marriage to Jennifer Brucklier ("Mother"). He argues the
court erred by finding that his separate investment property belonged to
the community, ordering the parties to pay their individual tax liability for
the last year of marriage rather than equally dividing the total tax liability,
and failing to offset his temporary child support overpayment toward his
temporary child support underpayment.

¶2        We hold that the court erred by characterizing real property
owned by Father's LLC as community property. The property was Father's
separate property because Father acquired an equitable interest before the
marriage even though he did not take legal title until after. And the use of
commingled funds did not transmute the real property's character but
entitled the community to an equitable lien against the property for the
value of its contributions. The court also erred by apportioning the parties'
tax liability without evidence of the total amount of the debt, yielding a
potentially unequal division. Finally, we hold that when a final child
support order is different from the obligation under a temporary order and
thus creates over- or underpayments of support, the court must offset any
net over- or underpayment and account for the disparity when equitably
distributing the parties' community property.

¶3        Thus, we remand for the court to establish a community lien
on the property and to otherwise conform the decree with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶4        Father was the sole member of MJB, an LLC used for real
estate investment. Father entered a contract to purchase a residential
investment property ("Falcon Ridge") before the marriage. Father and MJB
acquired legal title to Falcon Ridge after the parties married in 2005. Mother
filed for dissolution in April 2018 when the parties had three minor
children. The court entered temporary orders requiring Father to pay child
support pending the dissolution proceedings.

¶5 Before the trial, the parties entered into a written agreement resolving several issues, including legal decision-making and parenting time, the allocation of most debts, and the disposition of MJB. *See* Ariz. R. Fam. Law P. 69. The agreement confirmed MJB, as well as its assets and debts, as Father's separate property, "subject to the family court's resolution of [Mother's] claims related thereto." The court accepted the agreement as fair and equitable. *See id.*

¶6 After the trial, the court entered a dissolution decree concluding that an equal division of the community property was appropriate to achieve equity. The court found that community and separate funds had been commingled in the bank account held by MJB. As a result, its assets, including Falcon Ridge, were community property. The court ordered MJB's financial account to be divided equally between the parties and the real property sold with the proceeds also divided between the parties after recognizing certain separate payments made by Father.

¶7 The court also found that Father was not entitled to reimbursement for a tax garnishment imposed by the IRS that he paid with separate funds after service of the dissolution petition. Instead, the court ordered the parties to bear their individual tax liability for the year.

¶8 The court entered permanent child support orders that modified the temporary child support, causing over- and underpayments for certain periods. The court did not, however, offset the overpayments toward the underpayments and instead entered a past-support judgment against Father for the underpayments. *See* A.R.S. § 25-320(B).

¶9 Father moved to amend the decree, arguing the court erred by finding that Falcon Ridge was community property, failing to credit Father for paying more than his share of the 2017 community tax liability, and by failing to offset the temporary child support overpayment toward the underpayment. The superior court denied the motion. Father appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1), -120.21(A)(1), and Arizona Rule of Family Law Procedure 78(c).

## DISCUSSION

¶10 We apply *de novo* review to the court's characterization of assets or debts as community or separate, but we review the court's division of those assets and debts for an abuse of discretion. *Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 13 (App. 2019). We review child support awards for an abuse of discretion. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018). A court abuses its discretion when the record lacks competent evidence to

support its findings. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). And we defer to the superior court's factual findings unless they are clearly erroneous. *Id.*

## A. The Superior Court Erred by Finding that Falcon Ridge Belonged to the Community.

¶11 Before the marriage, Father formed MJB to invest in residential properties. Father was MJB's only member. Father entered a contract to purchase Falcon Ridge and paid $50,000 in earnest money before the marriage but did not close on the property until after. Along with the $50,000 earnest deposit, Father paid for Falcon Ridge using the proceeds from the sale of two of MJB's other properties (acquired before the marriage and thus Father's separate property) and a loan obtained in his name only. S*ee Cooper v. Cooper*, 130 Ariz. 257, 259–60 (1981); *Potthoff v. Potthoff*, 128 Ariz. 557, 562 (App. 1981) (A mere change in the form of the property does not change the character of the property.).

¶12 Mother presented evidence that Father used community funds to pay some of MJB's expenses, including mortgage payments, maintenance, and improvement expenses for Father's (MJB's) separate real properties. Father asserted that MJB's separate funds could be explicitly traced, and the community was owed about $315,000 as an equitable lien against Falcon Ridge.

¶13 Mother argued that community funds had been used to increase the equity in the real properties held by MJB during the marriage and that Father's analysis of the community's contributions failed to address the properties' increase in value transferred to properties acquired by MJB through the like-kind exchange under 26 U.S.C. § 1031.[1] She argued that Father failed to explicitly trace the transferred value, so the court should presume that the acquired properties were bought with community funds and thus community property.

¶14 The court found that community funds had been expended toward increasing the value of Falcon Ridge because Father's separate funds had been commingled with community funds in MJB's bank account.

---

[1] Under 26 U.S.C. § 1031(a)(1), "[n]o gain or loss shall be recognized on the exchange of real property held for productive use in a trade or business or for investment if such real property is exchanged solely for real property of like kind which is to be held either for productive use in a trade or business or for investment."

Based on when the legal title was transferred to Father and the use of community funds, the court found Falcon Ridge to be community property and ordered the house to be sold. The court ordered the sale proceeds divided between the parties.[2]

¶15  Father argues that the court erred by finding Falcon Ridge was acquired during the marriage. He also contends that even if we affirm the superior court's finding that Falcon Ridge was acquired during the marriage, we should hold that the court erred by failing to find that Father rebutted the community property presumption with clear and convincing evidence.

   **1. The Court Erred by Finding that Falcon Ridge Was Community Property Because Father Possessed an Equitable Interest in the Property Before the Marriage.**

¶16  A basic tenet of community property law is that property acquires its character as community or separate depending on its owner's marital status at the time of acquisition. *Lawson v. Ridgeway*, 72 Ariz. 253, 261 (1951). "Time of acquisition" refers to the time at which the right to obtain title occurs, not the time when legal title is conveyed. *Potthoff*, 128 Ariz. at 561; *Hollingsworth v. Hicks*, 258 P.2d 724, 729–30 (N.M. 1953); *Rivera v. Hernandez*, 441 S.W.3d 413, 420 (Tex. Ct. App. 2014) (Characterization of property as either community or separate is determined at the inception of title to the property. The inception of title occurs when a party first has a claim to the property under which title finally vests.). Stated another way, the status of title, as community or separate, is determined by the status of the initial interest that matures into the full title. *Fisher v. Fisher*, 383 P.3d 840, 843 (Idaho 1963). Under this rule, property in which one spouse has acquired an equitable interest before marriage is separate property, though the title is not perfected until after the marriage.

¶17  Father claims that before the marriage, he signed a purchase contract for Falcon Ridge and paid $50,000 earnest money. According to the closing document submitted by Father, the remaining down payment of $418,716 was paid after the marriage from the sale of Father's premarital

---

[2] The court ordered an equal division of the proceeds subject to Father's reimbursement for mortgage payments made with his separate funds after the petition for dissolution had been served as well as the earnest deposit. The court's sale order did not account for the funds used through the like-kind § 1031 exchanges.

interest in land resulting in a § 1031 exchange. And the title to Falcon Ridge was put in Father's sole name at closing.

¶18        While finding that Father had paid the $50,000 earnest money before the marriage, the court still found Falcon Ridge was community property. The court based its conclusion partly on the fact that the "Falcon Ridge property was not actually purchased until after the parties were married. Father bought the property in March 2006 [closing date] and executed a warranty deed to MJB." The court's conclusion is error.

¶19        When Father paid the $50,000 in earnest money before the marriage, he acquired an equitable interest in Falcon Ridge. *See Tucson Fed. Savs. & Loan Ass'n v. Sundell*, 106 Ariz. 137, 141 (1970) (A purchaser acquired an interest in land when she paid earnest money.); *Rigoli v. 44 Monroe Mktg., LLC,* 236 Ariz. 112, 117, ¶ 17 (App. 2014) (A purchaser acquires equitable interest when the purchaser enters a binding contract and renders payment.). That Father's equitable interest did not mature into a title to Falcon Ridge until after the marriage does not alter that he acquired the property before marriage. *Potthoff*, 128 Ariz. at 561. Falcon Ridge was thus Father's separate property at the time of acquisition.[3] *See Lawson*, 72 Ariz. at 261.

¶20        The court also concluded that Falcon Ridge was community property because mortgage payments, maintenance, and improvement costs were paid with commingled funds, noting

> separate and community property were commingled, and [Father] has failed to show by clear and satisfactory evidence that the commingled funds of MJB are separate. Thus, the

---

[3]        Even assuming Father (MJB) acquired Falcon Ridge after the marriage, Father rebutted the community presumption. *See* A.R.S. § 25-211(A); *Nace v. Nace*, 104 Ariz. 20, 22–23 (1968). Father paid more than half the purchase price outright with separate funds (his earnest money deposit) and other separate property (§ 1031 exchange credit). He financed the balance of the price with separate debt (a mortgage in his name alone). And he took title to the property in his name alone before transferring it to MJB. Despite Mother's argument to the contrary, the *only* indication was that Father acquired Falcon Ridge as his separate property, providing clear and convincing evidence to rebut the community presumption. *See Nace*, 104 Ariz. at 22–23.

Court concludes that the assets [financial account and Falcon Ridge] of MJB are community in nature.

¶21    This was also error as it relates to real property like Falcon Ridge. Real property is easily traceable. It is not fungible. Commingling can transmute financial accounts but not tangible assets like real estate. *See Potthoff*, 128 Ariz. at 562. In *Potthoff*, we held that a commingling theory would not support a finding that real property was transmuted to community property. *Id.* We explained that commingling "is simply not applicable to real property because of the 'unique' nature of that type of property. You cannot mix Black Acre with White Acre and obtain Gray Acre." *Id.* Because the real property was traceable, the court had a duty to award it to Father and calculate an equitable lien for the community's contribution. *See Nace*, 104 Ariz. at 22.

**2.    The Community Is Entitled to an Equitable Lien Equal to the Increase in Equity Resulting from Community Payments Reducing the Mortgage Principal and the Amount the Community Spent on Improvements.**

¶22    The community acquires an equitable lien against the separate property of one spouse when it contributes capital, causing the property to increase in value. *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 12 (App. 2010). An equitable lien's existence and value encompass mixed questions of fact and law. *Id.* ¶ 11.

¶23    The parties both testified that payments were made on MJB's real estate mortgages using the community checking account and MJB's checking account containing commingled funds. We cannot say that the court—after explicitly finding Mother's expert's testimony reliable and persuasive and questioning the tracing performed by Father's expert—erred by concluding community funds had been expended toward increasing the value of Falcon Ridge. But because Falcon Ridge is Father's separate property, the court erred by ordering its sale. We, therefore, vacate the court's order and remand for the superior court to award the community an equitable lien equal to the amount spent increasing the home's equity from the community and commingled accounts. *See Drahos v. Rens*, 149 Ariz. 248, 249–50 (App. 1985).

**B.     The Superior Court Erred by Denying Father's Request for Reimbursement for a Tax Garnishment Imposed on his Separate Earnings after Service of the Petition.**

¶24        Father filed a separate income tax return for 2017. The IRS assessed around $15,000 as a penalty for unpaid income taxes that Father asserts related to community income for the tax year 2017. Father's separate earnings were garnished, and at the trial, he requested that Mother reimburse him for her half of the community obligation. *See Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017) (A spouse's payments toward community debt must be accounted for in an equitable property distribution.). Mother offered no evidence about her tax situation for 2017.

¶25        After the trial, the court found that without Mother's knowledge, Father "chose to claim all three children and file a separate tax return," and the "separate tax returns likely caused the parties to pay more in taxes than if they had filed jointly." It ruled that "[i]n equity, and based on the evidence presented, the Court will order that both parties bear whatever liability he/she incurred for tax year 2017 without offset to the other party."

¶26        Father asserts the court erred when it assigned to him the community tax debt as a matter of equity when the court had no evidence about Mother's tax liability. On the other hand, Mother argues the court was within its discretion to apportion the community debt, even unequally, because the division was equitable.

¶27        The court erred by making an equitable apportionment based on the finding that Father acted without Mother's knowledge in accruing the debt. Debts incurred during marriage are presumed to be community. *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 10 (App. 2000). Generally, either spouse may incur debt unless one of the narrow exceptions applies. *See* A.R.S. § 25-215(D). For this reason, Mother's knowledge and consent to Father's filing status is irrelevant.

¶28        Similarly, the court erred by finding, without supporting evidence, that Father's actions likely increased the community tax burden and by determining, again without supporting evidence about Mother's tax liability for the year, that assigning liability to each spouse was equitable. While a court has discretion in how to allocate individual assets and liabilities to determine an equitable property division, A.R.S. § 25-318(A) requires the court to "divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind, *without*

*regard to marital misconduct*." (Emphasis added.) *See also Oppenheimer v. Oppenheimer*, 22 Ariz. App. 238, 244 (1974) (Fault "should only be considered to the extent that there are excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common."); *Hatch v. Hatch*, 113 Ariz. 130, 135 (1976) (Hays, J. dissenting) (The legislature's enactment of A.R.S. § 25-318 puts to rest the question of whether fault is to be considered in the community property distribution.).

¶29 The court's finding that Father's filing "likely caused the parties to pay more in taxes" finds no support in the record, considers fault for the debt in violation of A.R.S. § 25-318(A), and is based on speculation about Mother's tax situation. Likewise, the order contradicts its contemporaneous conclusion that "an equal division of community property is appropriate to achieve equity." The court had the discretion to determine whether an unequal property division was equitable or find Father wasted community resources under A.R.S. § 25-318(C). But it did neither.

¶30 The court did not have the authority to award community tax debt solely to Father on these facts. As a result, we reverse and remand for an equitable division of the community's 2017 tax debts.

## C. The Superior Court Erred by Failing to Appropriately Credit Father for Child Support Previously Paid.

¶31 During the dissolution proceedings, the court imposed temporary child support. At the trial, Mother requested a retroactive child support adjustment. The court granted Mother's request and awarded child support effective August 1, 2018, creating a support underpayment of $3,855 for August to October 2018. The court also found that Father overpaid $6,252 in support between November 2018 and the end of 2020. Father asked the court to offset the overpayment amount toward the underpayment. But citing A.R.S. § 25-527, the court determined that it could not order reimbursement for the overpayment until after Father's child support obligation terminated when the children reached majority.

¶32 Although the court's rationale is accurate for overpayments above a *final* child support order, the decree must account for over- and underpayments from temporary orders, including offsets.

¶33 "An obligor whose obligation to pay support has terminated may file a request for reimbursement against the obligee for support payments made in excess of the amount ordered." A.R.S. § 25-527(A). The

statute encapsulates the rule that child support overpayments cannot be credited against future support obligations. *Pellar v. Pellar*, 443 N.W.2d 427, 429 (Mich. 1989); *see also* 7 A.L.R.6th 411 (2005). The Michigan Supreme Court explained the rationale for the rule:

> [I]t would be possible for a parent, who is obligated to pay support, to build up a substantial credit, then suddenly refuse to make support payments for several weeks, months, or even years, thus thwarting the court's purpose in setting the payments at certain specified intervals, that of providing regular, uninterrupted income for the benefit of that parent's children, who are in the custody of another. The regularity and continuity of court decreed support payments are as important as the overall dollar amount of those payments.

*Pellar*, 443 N.W.2d at 430 (quoting *Haycraft v. Haycraft*, 375 N.E.2d 252 (Ind. 1978)). Even before adopting A.R.S. § 25-527, Arizona adhered to this rule. *Corbett v. Corbett*, 116 Ariz. 350, 352 (App. 1977) (Absent an agreement between the parties, money previously paid over an obligation may not be used to offset future support payments.).

¶34 But the rule does not apply to temporary orders issued under A.R.S. § 25-315. A temporary order under A.R.S. § 25-315(F)(1) "does not prejudice the rights of the parties or of any child that are to be adjudicated at the subsequent hearings in the proceeding." Other jurisdictions likewise recognize an exception to the rule when a retroactive adjustment of child support results in an immediate overpayment, as happened here. *See, e.g.*, *Tompkins Cnty. Support Collection Unit ex rel. Chamberlain v. Chamberlain*, 305 A.D.2d 813, 814 (N.Y. App. Div. 2003); *Ogard v. Ogard*, 808 P.2d 815, 816–17 (Alaska 1991); *Lickle v. Lickle*, 606 So. 2d 391, 392 (Fla. Dist. Ct. App. 1992). And offsetting an overpayment based on a temporary order does not inhibit "[t]he regularity and continuity of court decreed support payments," *Pellar*, 443 N.W.2d at 430, because it does not impact *future* support payments.

¶35 Father was entitled to an offset. We direct the superior court to correct the error on remand and offset any overpayment when determining the equitable property disbursement.

## ATTORNEY'S FEES

¶36 Both parties request an award of attorney's fees and costs. Under A.R.S. § 25-324(A), a court may award reasonable attorney's fees after considering the financial resources of both parties and the reasonableness of each party's positions throughout the proceedings. We

decline to award attorney's fees. As the prevailing party, we award Father costs upon compliance with ARCAP 21.

## CONCLUSION

¶37        We vacate and remand those portions of the decree discussed in this opinion for further proceedings. The dissolution decree is otherwise affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA