IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KATHERINE WHITT, *Petitioner/Appellee,*

*v.*

MARCO MEZA, *Respondent/Appellant.*

No. 1 CA-CV 23-0256 FC
FILED 2-27-2024

Appeal from the Superior Court in Maricopa County
No. FC2021-003483
The Honorable Daniel G. Martin, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Stanley David Murray, Attorney at Law, Scottsdale
By Stanley David Murray
*Counsel for Petitioner/Appellee*

State 48 Law Firm, Scottsdale
By Bryce Johnson, Robert Hendricks, & Stephen Vincent
*Counsel for Respondent/Appellant*

---

## OPINION

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Cynthia J. Bailey and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

¶1        Marco Meza ("Father") appeals several rulings in the decree dissolving his marriage to Katherine Whitt ("Mother"). We vacate the characterization of the Chase bank account ("Chase account") that Father co-owned with his mother ("Grandmother") as community property because Grandmother's non-marital property cannot be transmuted to the community. As a result, we also vacate the equalization judgment for the community bank accounts and offer instructions on the pre- and post-marital portion of the Chase account. We affirm the superior court's calculation of the community's equitable lien on Father's separate real estate. But we vacate and remand the vehicle equalization judgment because the evidence does not support the amount of the community's interest found by the court. We affirm the rest of the decree.[1]

### FACTS AND PROCEDURAL BACKGROUND

¶2        Mother and Father married in 2015 and have three children. Father opened the Chase account with Grandmother before the marriage and they deposited their earnings into the Chase account. After the marriage, Father and Grandmother continued to deposit their earnings into the Chase account. Mother and Father used the Chase account to pay for living expenses during the marriage, though they also had bank accounts

---

[1]        The parties raise other issues that do not meet the criteria for publication. *See* Ariz. R. Sup. Ct. 111(b); ARCAP 28(b). We address those issues in a separate, contemporaneously filed memorandum decision. *See* Ariz. R. Sup. Ct. 111(h); *Bobrow v. Bobrow*, 241 Ariz. 592, 594, ¶ 2, n.3 (App. 2017).

in their names.[2] The Chase account had a balance of around $42,000 on the marriage date. It grew to around $98,500 on the date of service. The day after service, Grandmother withdrew the entire balance.

¶3        Father bought a home before the marriage but paid the mortgage with community funds during the marriage. Mother agreed the home is Father's separate property but asserted the community had an equitable lien. The parties also owned five vehicles, two bought during the marriage. Father bought the other three vehicles before the marriage but made payments with community funds.[3]

¶4        As relevant to this appeal, the superior court awarded Mother $51,212 as an equalization judgment for her share of the "community depository accounts." The court awarded the home to Father and found Mother's interest in the community's equitable lien on the home was $14,469. The court found one vehicle (Rav4) was Father's separate property, awarded one vehicle to Mother (2006 Acura), and awarded the three other vehicles to Father (Subaru, 2007 Acura, and Toyota Highlander) with an equalization judgment of $15,625 owed to Mother.

¶5        Father sought post-decree relief, which the superior court partially granted on an issue irrelevant to the appeal. After the court entered an appealable decree, Father appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1) and (2) and Arizona Rule of Family Law Procedure ("Rule") 78(c).

---

[2]        According to Mother's pretrial statement, the subject bank accounts had these balances at the time of service: Mother's Bank of America account #5269 ($612); Mother's Bank of America account #3881 ($822); Father's BBVA account #4246 ($291); Father's BBVA account #4659 ($5,038); Father and Grandmother's joint Chase account ($98,530).

[3]        Father does not dispute Mother's value assessment for the vehicles at the time of service. The vehicle's values are as follows: 2006 Acura ($4,370); 2009 Toyota Highlander ($8,353); 2014 Subaru Impreza ($27,015); and 2007 Acura MDX ($6,250). Although the fifth vehicle, the Rav4, was never assigned a value, Mother conceded that it was Father's sole and separate property.

## DISCUSSION

### A. The Superior Court Did Not Have to Make Written Findings of Fact and Conclusions of Law After It Directed the Parties to Submit Proposed Decrees.

¶6      Father argues that the superior court erred by failing to make written findings of fact and conclusions of law under Rule 82(a). Neither party requested findings under Rule 82(a). But Father argues on appeal that the court invoked Rule 82's requirement for written findings and legal conclusions when it ordered the parties to submit proposed decrees. We disagree.

¶7      For Rule 82(a) to apply, a party must request findings. *See* Ariz. R. Fam. Law P. 82(a)(1) ("*If requested before trial*, the court must make separate findings of fact and conclusions of law.") (Emphasis added.). Rule 82(a) does not encompass the court's authority to order parties to submit proposed forms of a decree. The court's authority to request proposed judgments comes from its "inherent power to do those things which are necessary for the efficient exercise of its jurisdiction." *Fenton v. Howard*, 118 Ariz. 119, 121 (1978). Thus, the court did not invoke Rule 82 when it ordered the parties to submit proposed decrees.

¶8      Without the requirement that the superior court make written findings, our standard of review presumes the superior court found every fact necessary to support its decision. *See Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 297, ¶ 19 (App. 2020); *Elliott v. Elliott*, 165 Ariz. 128, 135 (App. 1990). We will affirm the decree if it is supported by reasonable evidence and view the evidence in the light most favorable to upholding it. *See Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 17 (App. 2015).

### B. The Superior Court Erred by Finding the Entire Chase Account Was Community Property.

¶9      Father and Grandmother had a joint Chase account at the time of the marriage with a balance of around $42,000. Mother did not dispute the $42,000 amount and conceded that Grandmother continued to deposit unspecified amounts into the Chase account throughout the parties' marriage. Mother also recognized that the parties used the Chase account for "community expenses" during the marriage. And the parties agreed that Father continued to deposit his earnings into the Chase account. While Father made withdrawals from the Chase account throughout the marriage, there was no evidence that he used these funds for separate expenses.

Neither party offered evidence that Grandmother withdrew her funds from the account until she withdrew all funds after service.

¶10      After the trial, the court adopted Mother's position that the entire Chase account was community property and ordered Father to pay an equalization judgment of $51,212 "for Mother's share of the community depository accounts." The court reached the $51,212 amount as follows. The total amount in all accounts was $105,293. Half of that amount was $52,646. The court awarded Mother her named accounts, which totaled $1,434—subtracting $1,434 from $52,646 leaves $51,212—the amount of the equalization judgment.

¶11      Father argues that the entire account was not transmuted to a community account because it contained marital and non-marital property. Father also claims the approximately $42,000 in the account on the marriage date is undisputedly Grandmother's non-marital and Father's separate property, and it was error to award Mother any of those funds.

¶12      Grandmother has an undisputed but undetermined interest in the pre-marital funds in the Chase account and the funds she deposited into the account during the marriage, less anything she withdrew. Mother argues that because Father failed to trace his pre-marital separate property and Grandmother's deposits and withdrawals, the entire account became commingled and is, therefore, community property. Not so.

¶13      Grandmother's funds in the account are not marital property and can never become such because she was never married to Father or Mother. In a dissolution proceeding, the court has the authority to assign each spouse their sole and separate property and equitably divide the community property, but it lacks the authority to assign non-marital property. *See* A.R.S. § 25-318(A) (authorizing the court to divide property in a dissolution). As a result, Grandmother's funds are not subject to transmutation simply because they were combined in an account containing the parties' community property. *See In re Marriage of Cupp*, 152 Ariz. 161, 164 (App. 1986) (The rule of "transmutation of separate property to community property occurs only when the identity of the property as separate or community is lost."). Because Grandmother was not a spouse in the dissolution, her property is neither "separate" nor "community." Grandmother's funds are non-marital property and not subject to transmutation.

¶14      As between Mother and Father, the funds Father deposited after the marriage are presumably community property. *See* A.R.S.

§ 25-211(A) (All property acquired during the marriage by either spouse is community property unless an exception applies.). But that does not allow the superior court to order Father to pay Mother one-half of all funds in the account. Mother had no right to any share of the funds Grandmother deposited into the account. *See* A.R.S. § 14-6211(A) ("During the lifetime of all parties an account belongs to the parties in proportion to the net contribution of each to the sums on deposit unless there is clear and convincing evidence of a different intent.").

¶15        Father also asserts that the $42,000 account balance on the marriage date is not subject to allocation because it was a combination of Grandmother's and Father's pre-marital funds. *See* A.R.S. § 25-213(A) (The property a spouse owned before marriage is that spouse's separate property.). A spouse's pre-marital property remains separate property unless transmuted by agreement or operation of law. *Potthoff v. Potthoff*, 128 Ariz. 557, 561 (App. 1981). "The mere fact that the property was commingled does not cause it to lose its separate identity, as long as the separate property can still be identified." *Cupp*, 152 Ariz. at 164; *see also Cooper v. Cooper*, 130 Ariz. 257, 259 (1981) (same); *Noble v. Noble*, 26 Ariz. App. 89, 95 (1976) (Commingling does not cause transmutation "so long as the funds remain traceable."). Father has the burden of proving with clear and satisfactory evidence what portion of his funds should not be found transmuted. *Cooper*, 130 Ariz. at 259-60.

¶16        At least some of the $42,000 account balance on the marriage date was traceable and did not lose its identity. *See Cupp*, 152 Ariz. at 164 (Separate funds remained traceable where spouse bought "easily identifiable assets" with commingled separate funds "within a very short time after receiving those funds."). The Chase account fluctuated during the marriage, but it never fell below $39,400. And there is no evidence in the record that Father used the Chase account for separate expenditures during the marriage. Thus, some funds in the account on the marriage date are identifiable despite the later addition of community funds. *See Cupp*, 152 Ariz. at 164. The superior court erred when it included all funds in the Chase account as community property. While Father and Grandmother may dispute their share of the pre-marital funds ($39,400), the community has no interest in them.

¶17        As to any amount above the $39,400 balance, the superior court must determine Grandmother's non-marital interest in the Chase account before it can determine the community's interest. We vacate the allocation of "the community depository accounts" and remand for reconsideration consistent with this opinion.

## C.    Grandmother May Be an Indispensable Party in Determining the Ownership of the Chase Account.

¶18    The parties dispute whether Grandmother was an indispensable party to the litigation over the Chase account. We need not decide on that issue because we are remanding the case to correct the abovementioned errors. Still, we address their arguments to guide the court because the issue may arise on remand. *See Buckholtz v. Buckholtz*, 246 Ariz. 126, 131, ¶ 17 (App. 2019); *State v. Abdi*, 226 Ariz. 361, 366, ¶ 18 (App. 2011).

¶19    Neither party asked the court to join Grandmother as an indispensable party, and the court did not order her to be joined. Whether a party is indispensable[4] (sometimes called a necessary party) is a mixed question of fact and law that must be determined on the facts of each case and that we review *de novo. See Gerow v. Covill*, 192 Ariz. 9, 14, ¶ 19 (App. 1998); *Friends of Black Forest Reg'l Park, Inc. v. Bd. of County Comm'rs*, 80 P.3d

---

4    Before the 1966 amendments to the Arizona Rules of Civil Procedure, parties to an action were known as three types:

> (1)    Proper parties: Parties who *may* be joined because the case involves a common question in which a person has an interest, but complete relief may nevertheless be granted without joinder.
> (2)    Necessary parties: Parties who *should* be joined because complete relief cannot be granted without joinder, but that party's interest is severable. *Siler v. Superior Court*, 83 Ariz. 49, 54 (1957).
> (3)    Indispensable parties: Parties who *must* be joined because the case cannot be adjudicated without such party's involvement. *Bolin v. Superior Court*, 85 Ariz. 131, 134-35 (1958); *Siler*, 83 Ariz. at 54.

2 Ariz. Prac., Civil Trial Practice § 11:5 (2d ed.) (cleaned up). The supreme court amended Rule 19 in 1966 to discard the "judicial gloss in terms of indispensable, necessary, and proper parties." *See* Ariz. R. Civ. P. 19, State Bar Committee Note to 1966 Amendment; *see also Riley v. Cochise County*, 10 Ariz. App. 55, 58 (1969). The 1966 amendments retained the "basic principle that parties must be joined where this is required by 'equity and good conscience.'" *See* Ariz. R. Civ. P. 19, State Bar Committee Note to 1966 Amendment (citations omitted). The supreme court adopted restyled rules in 2017 but did not change the thrust of Rule 19.

871, 881 (Colo. App. 2003). Although Father did not raise the issue below, the failure to join an indispensable party is not waivable and may be raised for the first time at the appellate level. *City of Flagstaff v. Babbitt*, 8 Ariz. App. 123, 127 (1968); *Gerow*, 192 Ariz. at 14, ¶ 19. So a court should always be mindful of the risk of entering a voidable order if an indispensable party is not joined. *See Shinn v. Ariz. Bd. of Exec. Clemency*, 254 Ariz. 255, 262, ¶ 26 (2022) ("Voidable orders or judgments, in contrast, are binding and enforceable, enjoy all of the ordinary attributes of a valid order or judgment until they are reversed or vacated, and may only be modified on direct appeal or by a proper and timely post-judgment motion.") (cleaned up); *Babbitt*, 8 Ariz. App. at 127 (A judgment rendered without an indispensable party is merely voidable and not void.).

¶20        A court may join a third party in a domestic relations action when joinder is "necessary for the exercise of its authority." A.R.S. § 25-314(D). A party is indispensable when their "interest in the controversy is such that no final judgment or decree could be entered, doing justice between the parties actually before the court and without injuriously affecting the rights of others not brought into the action." *Gila Bend v. Walled Lake Door Co.*, 107 Ariz. 545, 549 (1971); *see also* Ariz. R. Fam. Law P. 33(c) (Courts must use the civil procedure rules in family cases for joinder, interpleader, or intervention.); Ariz. R. Civ. P. 19(a) (A party is necessary when the court cannot provide complete relief in their absence, the absent party's interests would be impaired or impeded by a judgment, or an existing party may be subject to substantial risk of inconsistent obligations.). Arizona Rule of Civil Procedure 19 aims to ensure the joinder of all interested parties in a single action and avoid a multiplicity of litigation. *Ariz. Title Ins. & Tr. Co. v. Kelly*, 11 Ariz. App. 254, 255 (1970). And a party who should be joined but refuses to participate may be brought in as a defendant or an involuntary plaintiff. *Vance v. Vance*, 124 Ariz. 1, 4 (1979).

¶21        Based on the current record, Father's argument appears to have merit. Mother argues Grandmother was not an indispensable party because her interests likely aligned with Father, who could protect Grandmother's portion of the Chase account but failed to do so. Father argues it was necessary to join Grandmother because her interest in the Chase account was adverse to his pre-marital separate property and the community interest, and, without her, there is a substantial risk of inconsistent obligations.

¶22　　　Based on the facts here, Father could not adequately represent Grandmother's interest without her agreeing to the representation because their interests are adverse. The greater Grandmother's interest in the account is, the smaller Father's and the community's interests would be. Because Grandmother was not afforded the opportunity to assign her interest or be joined as a party, she could not participate in determining how much of the Chase account she owned. Grandmother had a right to appear and protect her property interest, *see* Ariz. R. Civ. P. 19(a)(1)(B)(i) (Joinder is necessary if disposing of a person's interest in their absence may "as a practical matter impair or impede that person's ability to protect the interest."), or to waive her right to appear. Due process requires that before an individual is deprived of a property interest, that person must have notice and an opportunity to be heard. *Johns v. Ariz. Dep't of Econ. Sec.*, 169 Ariz. 75, 79 (App. 1991) (citing *Boddie v. Connecticut*, 401 U.S. 371, 377-79 (1971)).

¶23　　　As noted, Grandmother withdrew all funds in the account the day after service. This withdrawal did not protect her interest or prevent more litigation over the funds. Father or Mother could demand repayment of the community's share of the account from Grandmother, which might lead to rulings inconsistent with the decree. Moreover, on this record, Grandmother's share may be even more than the amount she withdrew if her total deposits minus withdrawals exceed the sum she took. This risk reinforces the need to either obtain Grandmother's waiver or join Grandmother as an indispensable party despite her withdrawal of the funds and the fact that the equalization judgment was against Father, not her. *See* Ariz. R. Civ. P. 19(a)(1)(B)(ii).

¶24　　　Mother also argues that Grandmother was not an indispensable party because, like *Gerow*, 192 Ariz. at 15, ¶¶ 22-23, the decree resolved the dispute between Mother and Father without adversely affecting Grandmother's interests. But this fact is unknown, as the superior court's decree awarding the entire account to Father subject to an equalization judgment to Mother did not resolve what the community funds were. As a result of the error, the equalization judgment awarding Mother one-half of the fund's value created a substantial risk of inconsistent obligations for Father. *See* Ariz. R. Civ. P. 19(a)(1)(B)(ii). Thus, Grandmother appears to be an indispensable party.

¶25　　　On remand, the superior court can determine whether Grandmother is indispensable. If she is, Grandmother may waive her right to participate or agree to have Father represent her interest. We leave it to the court to fashion an appropriate path forward with the issue before it.

**D.     The Court Correctly Determined the Marital Lien on the Community Home.**

¶26          Mother did not dispute that the community home was Father's separate pre-marital property. She claimed the community had an equitable lien because the parties paid the mortgage on Father's separate property with community funds throughout the marriage. When Father refinanced the home loan in July 2019, Mother signed a disclaimer deed.

¶27          The superior court awarded the home to Father and determined that Mother's share of the equitable lien was $14,469. We apply *de novo* review to the court's characterization of assets or debts as community or separate, but we review the court's division of those assets and debts for an abuse of discretion. *Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 13 (App. 2019).

> **1.     Father Failed to Show Prejudice When the Superior Court Mistakenly Listed the Home as Community Property Because the Court Awarded the Home to Father as His Separate Property.**

¶28          Father argues the superior court erroneously characterized the home as community property in the decree based on the following language: "Father is awarded the following *community* property as his sole and separate property . . . [a]ll right, title, interest, and equity in the real estate consisting of the home . . . ."  (Emphasis added.) Although the decree lists the home as community property, this misstatement is harmless error because the court awarded the home to Father as his separate property. Mother received half of the community's equitable lien in the home, suggesting she had no ownership interest in the separate property home.

¶29          Even so, Father contends the error is not harmless because by characterizing the home as community property, the superior court "must" have factored the $60,000 in equity into the equitable division of property, which "may have spurred the trial court to award Mother more than it otherwise would have." Father fails to explain how or what specific property division was inequitable because of the misstatement. As a result, we reject the unsupported argument.

> **2.     Father Waived His Argument That the Court Should Use a Different Date to Calculate the Community's Equitable Lien.**

¶30          Father argues it was error to use the date of the marriage (November 10, 2015) instead of the date Mother signed the disclaimer deed (July 18, 2019) in calculating the equitable lien under the formula outlined

in *Drahos v. Rens,* 149 Ariz. 248 (App. 1985), and *Barnett v. Jedynak,* 219 Ariz. 550 (App. 2009) ("*Drahos/Barnett* formula").

¶31        Father did not argue about which date to use before the trial. Instead, he argued that Mother had no interest in the home. In his post-trial motion to alter or amend the decree, Father argued for the first time about which date (marriage or refinance) should be used. Arguments raised for the first time in a post-trial motion are typically waived. *See Conant v. Whitney*, 190 Ariz. 290, 293-94 (App. 1997).

¶32        Father argues that waiver should not apply to him because he could not have raised the *Drahos/Barnett* formula error before the court issued the decree. We reject the argument. Father knew of Mother's proposed *Drahos/Barnett* calculation at trial yet maintained that the community had no equitable lien. He could have objected to Mother's position and raised his alternative *Drahos/Barnett* calculation at trial.[5] Thus, Father has waived the argument.

**E.        The Subaru is Father's Separate Property, and the Record Does Not Support the Amount of the Vehicle Equalization Judgment.**

¶33        As noted above, the decree addressed five vehicles. It awarded Mother the 2007 Acura and Father four vehicles, including a Rav4 and a Subaru. Mother did not dispute that the Rav4 and Subaru were Father's pre-marital separate property. But Mother sought an equalization judgment for half the Subaru's value because they used community funds for some Subaru car payments after the marriage. The court awarded Mother a $15,625 equalization judgment for her share of the vehicle equity without explaining how it arrived at the figure.

¶34        Father argues the superior court erred because it awarded him only "one-half of all right, title, interest, and equity" in the Subaru and the Toyota Highlander without awarding the other half to Mother. This was harmless error. The court did not award Mother the "other half" of these vehicles but awarded her an equalization judgment. On remand, the court

---

[5]        Our supreme court issued its opinion in *Saba v. Khoury*, 253 Ariz. 587 (2022), two weeks before trial. Thus, to the extent that that Father now relies on the *Saba* opinion, it was available at the time of his pretrial statement (September 21, 2022), trial (September 27, 2022), and opening brief (September 28, 2023). Father's failure to argue it until the reply brief waives the issue.

should amend the decree to clarify that it awarded Father all interest in the Subaru and Highlander referred to in the decree.

¶35        Father also asserts that the decree erroneously listed the Rav4 and Subaru as community property and assigned them to Father as his separate property. This is also harmless error. Though the wording in the decree purports to award "the following community property" to Father, these two vehicles were undisputedly Father's pre-marital separate property. There was also no evidence of the Rav4's value, so the court could not have considered it in calculating the equalization judgment. The incorrect language does not warrant reversal.

¶36        Father contends it was error to include the value of the Subaru in the equalization judgment because it was his separate property. *See* A.R.S. § 25-213(A). Property bought before marriage on credit or with borrowed funds acquires the status of separate property at the time of the purchase. *See Brucklier v. Brucklier*, 253 Ariz. 579, 583, ¶ 16 (App. 2022) (Property acquires its character as community or separate depending on its owner's marital status at the time of acquisition.). And regardless of the community or separate nature of the funds used to satisfy the debt, it remains such. *Flynn v. Allender*, 75 Ariz. 322, 325 (1953) (citing 41 C.J.S., Husband and Wife, § 483); *Brucklier*, 253 Ariz. at 584, ¶ 21 ("Commingling can transmute financial accounts but not tangible assets.").

¶37        While the Subaru was and remains Father's separate property, the community has an equitable lien for the community funds used to pay toward the separate debt. *See Flynn*, 75 Ariz. at 326; *see also Cameron v. Cameron*, 148 Ariz. 558, 559 (App. 1985). Father argues that the appropriate equitable lien calculation is the formula outlined in *Valento v. Valento*, 225 Ariz. 477, 482, ¶¶ 14-16 (App. 2010), which calculates a community's equitable lien for a depreciating asset. The *Valento* formula is valid for calculating a lien on a depreciating asset. But in *Cameron,* we also affirmed an equitable lien calculation that deducted the car's depreciation from the principal payments made by the community. 148 Ariz. at 559. The court could have used either method, but it used neither.

¶38        The superior court has the discretion to determine the best method for calculating an equitable lien to "achieve substantial justice between the parties." *Saba*, 253 Ariz. at 592, ¶ 16 (quoting *Cockrill v. Cockrill*, 124 Ariz. 50, 54 (1979)). Mother's burden was to prove the community's interest in Father's separate property. *See DeFrancesco v. DeFrancesco*, 248 Ariz. 23, 24, ¶ 4 (App. 2019) (The burden of proof is on the party asserting an interest in the other spouse's property.). Mother's only evidence was the

purchase price ($34,495) and the Subaru's current value ($27,015). The record does not show how the current value corresponds to the amount the community contributed in car payments. As a result, we vacate the vehicle equalization judgment and remand for reconsideration.

## ATTORNEY'S FEES AND COSTS

**¶39** Mother requests an award of attorney's fees and costs on appeal under A.R.S. § 25-324. While neither party took unreasonable positions, the financial disparity between the parties warrants awarding Mother her reasonable attorney's fees on appeal after compliance with ARCAP 21. As the prevailing party on appeal, Father is entitled to his costs under A.R.S. § 12-342(A) after compliance with ARCAP 21.

## CONCLUSION

**¶40** We affirm the community's equitable lien on Father's separate property home and the trial attorney's fees award. We vacate the equalization judgment for the parties' bank accounts because the court characterized the entire Chase account as community property. On remand, the court must determine whether Grandmother is an indispensable party, determine her interest in the Chase account, separately determine the separate or community nature of the funds in the Chase account, and exercise its discretion to allocate the community funds consistent with A.R.S. §§ 25-213 and -318. We also vacate the vehicle equalization judgment and remand for reconsideration because the record does not support the amount attributed to the community's interest in Father's separate property, the Subaru. Because we vacate the two equalization judgments and remand for reconsideration, it may affect the spousal maintenance analysis and award. Thus, we instruct the court to reconsider the maintenance award on remand. If there is a change to the spousal maintenance award, the court must also reconsider the child support order.

